**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                    No. 94-5864

LARRY BEST,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CR-93-258-P)

Argued: December 7, 1995

Decided: January 30, 1996

Before ERVIN, Chief Judge, and MICHAEL and
MOTZ, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Kenneth P. Andresen, Charlotte, North Carolina, for
Appellant. Robert Jack Higdon, Jr., Assistant United States Attor-
ney/Lead Attorney, Organized Crime Drug Enforcement Task Force,
Charlotte, North Carolina, for Appellee. **ON BRIEF:** Mark T. Cal-
loway, United States Attorney, Charlotte, North Carolina, for Appel-
lee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant, Larry Best, pled guilty to conspiracy to possess with intent to distribute, and distribute, quantities of cocaine and cocaine base. The district court sentenced Best to 264 months in prison (22 years), and 5 years of supervised release. Best now appeals his sentence, claiming that the government breached a plea agreement with him by refusing to make a motion for a downward departure from the Sentencing Guidelines under § 5K1.1 (substantial assistance to authorities) and by failing to recommend a sentence between seven and eight years. We reverse and remand for resentencing.

Best was indicted by a federal grand jury on December 8, 1993. He subsequently expressed his desire to cooperate in the investigation and prosecution of the charged conspiracy. On February 7, 1994, he was debriefed as to his own involvement in the conspiracy, as well as to the identities and activities of his co-conspirators. Best's statement was reduced to writing and became part of the government's discovery file. On May 9, 1994, the Assistant United States Attorney assigned to Best's case wrote a letter to Best's counsel. In exchange for Best's "straight up" guilty plea, the government offered to stipulate to a smaller amount of cocaine foreseeable to Best than had originally been contemplated and "[a]dditionally, if [Best] continues to cooperate with the investigators," the government agreed "to recommend a sentence of somewhere in the range of seven (7) to (8) years."

Ten days later, on May 19, 1994, Best pled guilty"straight up" to the sole count in his indictment, and the government stipulated to the smaller amount of cocaine foreseeable to him. Best's debriefing statement was used to obtain guilty pleas from some of the co-conspirators Best named therein. Minutes before Best's August 15, 1994 sentencing hearing, however, the government informed Best's attorney that although it still intended to make a motion for a downward departure,

2

it would recommend a sentence of 144 months (12 years), rather than the seven to eight year range indicated in the government's May 9 letter. The reason for this, the government explained, was that it anticipated needing additional cooperation from Best to obtain future indictments, and planned to reward that cooperation by recommending an additional sentence reduction to the range discussed in the letter through a Rule 35 motion.[1]

Best's counsel promptly responded that he believed the government's position to be a breach of the plea agreement established by the May 9 letter. At the sentencing hearing, Best took the stand and recanted much of what he had said in his February 7 debriefing. Finding this testimony decidedly uncooperative, the government determined that Best had breached the plea agreement, and thus refused to make a § 5K1.1 motion at all. The court sentenced Best to a term of 264 months.

As Best correctly notes, it is well-established that"when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). It is clear in this case that Best's guilty plea was induced, at least in part, by the promises contained in the government's May 9 letter. The government fulfilled its promise as to the stipulation to a lower amount of cocaine foreseeable to Best. Whether the government breached a binding agreement by failing to make a § 5K1.1 motion and by failing to recommend a sentence in the range of seven to eight years is the question before us.

Although we do not import principles of contract law wholesale into the law of plea agreements, we have repeatedly recognized that contract law may provide invaluable guidance in the plea agreement context. See, e.g., United States v. United Medical and Surgical Sup-

_____

[1] At sentencing, a reduction in sentence for providing substantial assistance to authorities is accomplished by a § 5K1.1 motion by the government. After sentencing, such a reduction may be requested by a government motion pursuant to Rule 35 of the Federal Rules of Criminal Procedure. See generally, United States v. Martin, 25 F.3d 211, 215-216 (4th Cir. 1994) (distinguishing between the two types of motions).

ply Corp., 989 F.2d 1390, 1400-1401 (4th Cir. 1993); United States v. Harvey, 791 F.2d 294, 300 (4th Cir. 1986); United States v. McIntosh, 612 F.2d 835, 837 (4th Cir. 1979). Our reliance on general contract principles is tempered by our recognition that "the defendant's underlying `contract' right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law." Harvey, 791 F.2d at 300. We are also mindful of concerns about the public perception of the federal judicial system. Id. In Harvey, we concluded that these concerns "require holding the Government to a greater degree of responsibility than the defendant (or possibly than would be either of the parties to commercial contracts) for imprecisions or ambiguities in plea agreements." Id.

This case is further complicated by the fact that the district court first found that "there was not a plea agreement." It then proceeded to assert that Best had warned an accomplice of an impending search, an event that indisputably occurred before Best had even been arrested and long before the prosecutor suggested an agreement. The record is silent as to when the investigating officers learned of this warning or whether it was before or after the May 9 letter was written. According to the district court, Best "in fact was impeding the government in its investigation by warning the one target Mr. Best had provided the government that there would be a search of the premises." Again, there is nothing in the record to support the court's suggestion that Best had provided the government with only a single target and the government never maintained that position.

The government argues that its offer to recommend a sentence between seven and eight years was a conditional offer, which never ripened into a binding agreement because Best never"fully" cooperated. At oral argument of this case, government counsel explained that the May 9 letter contemplated that Best would cooperate against all of the people he identified in his debriefing, and thus at the time of sentencing, he had only partially cooperated, because he had not yet cooperated against those people who had yet to be indicted or convicted.[2] The government contends that, had Best not recanted his

_____

[2] Significantly, at oral argument the government conceded that it was not relying on the fact that the letter referred to"continued," as opposed to past cooperation. Best's information had apparently been useful in obtaining guilty pleas from several defendants both before and after the May 9 letter.

4

February 7 statement at the sentencing hearing, and had he cooperated against the remaining conspirators, it would have fulfilled the agreement by making a Rule 35 motion and recommending a sentence between seven and eight years.

Even if the government had the right to proceed in this way--and it is not at all clear that it did, see United States v. Martin, 25 F.3d 211, 216 (4th Cir. 1994)--the May 9 letter did not so provide. The letter contains no description of what the government considers to be "full" cooperation, nor is there any mention of the fact that the promised sentence recommendation would be accomplished partially by motion for downward departure and partially by a Rule 35 motion. Indeed, there is no mention at all of Rule 35.

Thus, the best that can be said for the government's May 9 letter is that it is ambiguous as to what cooperation is expected of Best and when and by what procedural vehicle the seven or eight year sentence recommendation would be made. Our application of contract law principles to the plea bargain context makes it clear that ambiguities in plea agreements are to be construed against the government. See Harvey, 791 F.2d at 303. Therefore, the government's promise to reward Best's cooperation with a sentence recommendation within the range of seven to eight years must be construed as a promise to make a § 5K1.1 motion and to recommend that range at the time of sentencing. The government's abrupt announcement to Best's counsel shortly before sentencing that it intended to recommend a higher sentence constituted a breach of the agreement by the government,**3** and thus

_____

**3** Two events, both described in the government's Response to Defendant's Motion to Correct Sentence, may partially explain the government's apparent change of heart. First, "The Court announced its intention to sentence the defendant and others regardless of the status of their cooperation in order to prevent any unnecessary delay." Second, "five days before the sentencing hearing, Agent Isley indicated (to the Assistant United States Attorney who wrote the May 9 letter) that he was preparing to submit additional evidence to the United States Attorney's office concerning the activities of other individuals in the hopes of obtaining further indictments. The evidence gathered against these individuals included the statements of various defendants in the instant matter. It was concluded that the defendant's continued cooperation was necessary."

5

Best's subsequent "uncooperative" testimony at the sentencing hearing is of no relevance. (Once one party breaches a contract, that party can certainly not complain of the other party's subsequent "breach.")

When the government breaches the terms of a plea agreement, the defendant's due process rights are violated. See , e.g., Martin, 25 F.3d at 217. In Santobello, the Supreme Court recognized that in some circumstances, the appropriate remedy for such a violation may be to require the government's specific performance of the agreement, while in other circumstances, the appropriate remedy is to allow the defendant to withdraw his guilty plea. 404 U.S. at 263. Best does not seek to withdraw his guilty plea, but instead seeks only the "benefit of his bargain." We conclude that ordering specific performance is indeed the appropriate remedy in this case. See United States v. Dixon, 998 F.2d 228, 231 (4th Cir. 1993); Martin, 25 F.3d at 217.

Accordingly, this case is remanded for resentencing. This resentencing is to be by a different district judge, as is required. See United States v. Peglera, 33 F.3d 412, 415 (4th Cir. 1994); see also, Santobello, 404 U.S. at 263; United States v. Brown, 500 F.2d 375, 378 (4th Cir. 1974). At the resentencing, the government is to make a § 5K1.1 motion and recommend a sentence between seven and eight years. The decision as to whether to grant the government's motion and follow the government's sentencing recommendation, of course, remains within the discretion of the district court.

REVERSED AND REMANDED

6