**UNITED STATES of America,**

v.

**Troy R. SAUNDERS**

**No. CRIM.97–344–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 7, 2002.

Neil Hammerstrom, Jr., U.S. Attorney's Office, Alexandria, VA, for Plaintiff.

Thomas Abbenante, Washington, DC, for Defendant.

### *ORDER*

ELLIS, District Judge.

The matter is before the court on defendant's *pro se* "motion to compel specific performance for breech [sic] of plea and Rule 35" and the government's motion to

withdraw the previously filed conditional Rule 35(b) motion.

## I.

On September 16, 1997, defendant Troy Saunders pled guilty to conspiracy to distribute 50 grams or more of cocaine base, commonly known as "crack cocaine," in violation of 21 U.S.C. §§ 841(a)(1) and 846. Following his plea, on December 18, 1997, Saunders was sentenced to a term of imprisonment of 235 months, followed by five years supervised release. Pursuant to the plea agreement, the second count of the indictment was dismissed, and Saunders agreed to "cooperate fully and truthfully with the United States, and provide all information known to him regarding any criminal activity." Plea Agreement at 4, para. 6. The agreement was expressly "conditioned upon the defendant providing full, complete and truthful cooperation." *Id.* at 6, para. 8. The United States reserved its option to seek a departure from the sentencing guidelines for substantial assistance in investigating or prosecuting another person under Rule 35(b), Fed. R.Crim.P., "if in its sole discretion, the United States determines that such a departure is appropriate." *Id.* at 6, para. 9. These aspects of the plea agreement were also thoroughly reviewed with Saunders in the course of the Rule 11 colloquy.[1]

Thereafter, Saunders cooperated with the government, providing information and testimony that ultimately played a role in the conviction of three persons. Saunders' cooperation was ongoing but not completed as the one year time limit for Rule 35 motions approached.[2] Accordingly, to ac-

---

1. In the course of the plea colloquy, the implications of this provision of the plea agreement were reviewed with defendant, and defendant, in turn, confirmed his understanding of this and other terms of the agreement:

   THE COURT: ....
   Now, the plea agreement further provides that the government, as the law permits it to do, reserves to itself the full discretion as to whether to bring any motion for downward departure, or for substantial assistance.
   What that means, Mr. Saunders, is this: If you cooperate with the government and provide the government with information, as you have obligated yourself to do in the plea agreement, and you believe the information you have given the government is good information that ought to be of substantial assistance to the government, but the government disagrees with that, you may not force the government to bring the motion for a downward departure.
   In other words, simply because you and the government disagree about whether the information has been helpful, you can't force the government to bring a motion, unless the government withholds a motion on the basis of some unconstitutional rea-

   son, such as discrimination on the basis of race, gender, or religion.
   *   *   *   *   *   *
   THE COURT: ....
   Now, are those the terms of your plea agreement with the government as you understand it, Mr. Saunders?
   THE DEFENDANT: Yes, sir.
   Transcript of Change of Plea Hearing at 17, 19 (September 16, 1997).

2. *See* Rule 35(b), Fed.R.Crim.P. (The government must move for a reduction "within one year after the sentence is imposed."). Prior to 1991, Rule 35 required that a motion to reduce a sentence based on substantial cooperation be filed and resolved within one year of the imposition of sentence. In 1991 the Rule was changed to require only the filing, but not the resolution, of the motion within the one year period. This change operates to allow the filing of a conditional motion where, as here, cooperation is ongoing and incomplete. *See* Rule 35(b), Fed.R.Crim.P., Advisory Committee Notes on 1991 Amendments (noting that the previous version of Rule 35 required the court to rule within one year and that this "caused problems ... in situations where the defendant's assistance could not be fully assessed in time to make a timely motion which could be ruled upon before one year had elapsed."); *See United*

commodate this time limitation, the government on December 15, 1998 filed a Rule 35(b) motion for reduction of sentence that, by its terms, was "expressly contingent upon the defendant's continuing complete and truthful cooperation." In the motion, the government indicated that it would delay proceeding on the motion until after the completion of Saunders' cooperation. As events unfolded, Saunders' cooperation continued throughout most of 2001, including March 2001, when he testified in a jury trial that resulted in one of the related convictions, and November 2001, when he met with government agents and underwent a polygraph examination.

Questions concerning whether Saunders' cooperation was "complete and truthful" arose after the conditional Rule 35 motion was filed in December 1998. Specifically, in April 1999, Ryan Armstead pled guilty to the first degree murder of crack cocaine dealer Phillip "Wine" Lewis, and gave a videotaped statement claiming that Saunders had paid him $7,000 to kill Lewis. Two other witnesses confirmed Armstead's story. For his part, Saunders denies that he ordered Lewis killed. More recently, Armstead and the other witnesses recanted their statements implicating Saunders.

Prior to the November 2001 meeting discussed below, the government offered Saunders a pre-indictment plea deal. Specifically, the offer provided that if Saunders pled guilty to the murder of Lewis, the government would move the Court under Rule 35(b), Fed.R.Crim.P., to reduce his sentences in the two cases to 15 years in each case, with the sentences to run concurrently. Saunders rejected this offer.

In November 2001, Saunders and his counsel met with government representatives for a debriefing on the Lewis murder. Because Saunders' plea agreement does not grant him immunity with respect to "crimes of violence related to, but not specifically set out in, the indictment or statement of facts," [3] the government provided Saunders with use immunity for any statements made during this meeting. At the meeting, Saunders continued to deny his involvement in the murder.

There is evidence that Saunders is not being truthful regarding the Lewis murder, and that the witnesses' recantations are also unreliable. First, Armstead did not recant his testimony until after he had received a significant reduction in sentence for his initial cooperation. Only after this benefit was secure did Armstead see fit to recant his testimony that Saunders ordered the murder of Lewis. Furthermore, though Armstead claimed to be the only person involved in the murder, he had no answer when an investigator asked him his motive for the killing. Roscoe Childs, a corroborating witness who subsequently wrote a letter recanting his testimony, admitted to a government agent that Saunders had asked him to write the letter, and that he, Childs, knew what could happen to him if he did not write the letter. Also significant is that during the November meeting Saunders admitted to paying Armstead between $5,000 and $7,000 in cash after the murder, although he claimed the payment had no purpose other than to help Armstead who was in hiding at an area hotel. Saunders also claimed that at the time he gave Armstead the money he suspected, but did not know, that Armstead had seriously injured or killed Lewis.[4] Finally, Saunders failed a polygraph

---

*States v. Edwards*, 2000 WL 219754 at *3 (4th Cir. February 25, 2000) (unpublished); *In Re Phillips, Beckwith & Hall*, 896 F.Supp. 553, 560 n. 12 (E.D.Va.1995).

**3.** Plea Agreement at 3, para. 5.

**4.** Saunders' objection to the use of these statements by the government in its motion to withdraw is meritless. Consistent with the agreement governing the November 6, 2001 meeting, the statements were not used "directly against [Saunders] in any criminal pro-

examination administered by the FBI concerning his involvement in the Lewis murder. When presented with these facts, the Downward Departure Committee of the U.S. Attorney's Office in Alexandria voted against seeking a sentence reduction for Saunders.

Claiming he has cooperated fully and been completely truthful, Saunders now moves to compel specific performance of the plea agreement and the December 15, 1998 Rule 35(b) motion. In response, the government moves to withdraw its conditional Rule 35(b) motion.

## II.

■ Rule 35(b), Fed.R.Crim.P., establishes that a court may reduce a sentence to reflect substantial assistance by the defendant upon a motion by the government. It is settled in this circuit that a court may grant a downward departure in the absence of a government motion only if (i) the government has obligated itself in a plea agreement to move for a departure, or (ii) the government's refusal to move for a departure was based on an unconstitutional motive. *See United States v. Wallace,* 22 F.3d 84, 87 (4th Cir.1994) (citing *Wade v. United States,* 504 U.S. 181, 185–86, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992)). If neither of these factors is present, a court may not grant a reduction even if the defendant has, in fact, provided substantial assistance. *See id.; Wade,* 504 U.S. at 186, 112 S.Ct. 1840. A defendant seeking

relief under the first factor bears the burden of proving the breach of a plea obligation by a preponderance of the evidence according to normal contract principles. *See United States v. Martin,* 25 F.3d 211, 217 (4th Cir.1994); *United States v. Conner,* 930 F.2d 1073, 1076 (4th Cir.1991). A defendant seeking relief under either factor is not entitled to an evidentiary hearing on the basis of mere allegations; he must go beyond mere allegations and make a "substantial threshold showing" that the government was obligated or that an unconstitutional motive was involved before an evidentiary hearing and consideration on the merits are warranted. *See United States v. Taylor,* 1999 WL 30928 at *3 (4th Cir. January 26, 1999) (requiring a substantial threshold showing on the first factor); *Wallace,* 22 F.3d at 87 (requiring a substantial threshold showing on the second factor).

Putting aside for the moment the government's filing of the conditional Rule 35(b) motion, it is clear that Saunders satisfies neither of the *Wallace* factors. First, there is no evidence that the government obligated itself to file a Rule 35 motion. Indeed, the evidence is plainly to the contrary. The plea agreement makes clear that the government retains "sole discretion" to file such a motion. Plea Agreement at 6, para. 9.[5] Although Saunders argues that the contract was subsequently modified by oral promises and assurances that he would receive a Rule 35(b) motion in exchange for his assistance,[6] he offers no proof of those promises

---

ceedings," nor were they turned over to another "prosecuting jurisdiction for use against him." Instead, they were used precisely for their intended purpose, namely to consider whether Saunders' cooperation was full, complete and truthful.

**5.** *See Wallace,* 22 F.3d at 87 (no binding obligation created where the United States "reserves its option" to seek downward departure "if in its sole discretion" the United States determines the defendant has provided substantial assistance); *compare United States*

*v. Conner,* 930 F.2d 1073, 1074 (4th Cir.1991) (binding obligation created where plea states that "[s]hould [defendant] provide substantial assistance[ ], then the United States will recommend . . .").

**6.** The Fourth Circuit has recognized that the government may become obligated to move for a downward departure on the basis of an oral modification of a written plea agreement, but only when presented with clear evidence of the modification. *See United States v. Edwards,* 2000 WL 219754 at *2 (4th Cir. Febru-

other than his own cooperation and the government's filing of a conditional Rule 35(b) motion. As Saunders confirmed during the plea hearing, the written plea agreement represents the full agreement between him and the United States.[7] Saunders' mere assertion now that other promises were made falls well short of the "substantial threshold showing" required for a hearing. Thus, Saunders has failed to satisfy the first *Wallace* factor.

Saunders has similarly failed to establish the second *Wallace* factor as there is simply no evidence that the government's refusal to seek a downward departure for him is based on an unconstitutional motive. In this regard, Saunders claims that the government is refusing to proceed with its conditional Rule 35 motion in order to "strong arm" him into pleading guilty to the murder for hire of Lewis, thus infringing on his Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to due process. Relying on *United States v. Paramo*, 998 F.2d 1212, 1219 (3rd Cir.1993), Saunders argues that the withdrawal of an offer to move for downward departure after cooperation can be unconstitutional if it is intended to punish the defendant for asserting his right to

go to trial. Saunders' argument is meritless and his cited authority is inapposite.[8] The plea offer is entirely legitimate and violates no constitutional strictures. Like all plea offers, it presents Saunders with the opportunity to obtain a more lenient sentence in return for a plea of guilty to the murder. In so doing the offer does not violate due process. *See Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("[T]his Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty."). Nor is the constitutional analysis different simply because the plea offer is linked to the Rule 35 motion; it could not be otherwise given the government's belief that Saunders paid Armstead to commit the murder. Given this belief, it is neither unreasonable nor unconstitutional for the government to proceed on the basis that Saunders' cooperation cannot be full, complete and truthful in the absence of a plea of guilty to the murder. In short, Saunders' allegations fail to state a valid claim of unconstitutional motive and thus fall far short of making the "substantial threshold showing" re-

ary 25, 2000) (Both sides stipulated to a new, implicit agreement.); *United States v. Martin*, 25 F.3d 211, 217 (4th Cir.1994) (At the sentencing hearing, the government conceded assistance was substantial, and stated intent to make a substantial assistance motion within one year.).

7. Plea Agreement at 8, para. 16; Transcript of Change of Plea Hearing at 18–19 (September 16, 1997).

8. In *Paramo*, the government withdrew an offer to file a U.S.S.G. § 5K.1 motion for downward departure at sentencing after defendant cooperated with the prosecution, but then decided to plead not guilty and proceeded to trial. *Paramo*, 998 F.2d at 1215. The Third Circuit remanded the case, directing the district court to review the prosecutor's

decision to withdraw the plea offer for unconstitutional motive under *Wade*, and noting that in this respect defendant bore the burden of showing actual prosecutorial vindictiveness, namely that the offer was withdrawn "solely to penalize him for exercising his right to trial." *Id.* at 1221. Unlike the defendant in *Paramo*, Saunders has *not* cooperated with regard to the matter for which he asserts his right to trial, the Lewis murder. Nor has the government indicated, as in *Paramo*, that the insistence on trial is the main reason for the refusal. *See id.* at 1215 (quoting letter from government indicating that withdrawal was "based on your client's refusal to plead to money laundering...."). The withdrawal in this case is clearly linked to Saunders' lack of truthfulness regarding the Lewis murder, not his desire for a trial on the Lewis murder.

quired for a hearing. *See Wallace,* 22 F.3d at 87.

This does not end the analysis, for it is now necessary to consider whether the government, in filing the conditional Rule 35(b) motion, altered or modified the plea agreement. In particular, the question presented is whether the language of the conditional motion alters or modifies the plea agreement provision conferring on the government complete discretion whether to seek a sentence reduction. Put differently, at issue is whether the motion operates to obligate the government to seek a reduction if Saunders provides cooperation that fulfills his plea agreement obligations, as in *Conner,* or whether the motion leaves unchanged and in place the plea agreement provision allowing the government unfettered discretion whether to seek a sentence reduction regardless of whether Saunders' cooperation amounts to substantial assistance, as in *Wallace.*

Because general principles of contract law govern plea agreement interpretation,[9] analysis of the question presented properly begins with the terms of the motion. The operative language of the December 15, 1998 motion is as follows:

> The United States of America ... hereby moves this Honorable Court, pursuant to Rule 35(b), Fed.R.Crim.P., to reduce the defendant's sentence, based on his substantial assistance in the investigation and prosecution of other persons involved in criminal conduct.

The defendant's assistance to the government has not been completed as of the filing of this motion. The motion will not be noticed for hearing until after the defendant's cooperation with the government has been completed. This motion is expressly contingent upon the defendant's continuing complete and truthful cooperation.

The government will file a supplemental memorandum detailing the defendant's substantial assistance, when his cooperation with the government is completed.

Absent the final sentence, this motion arguably would not have modified the government's discretion. Yet the motion clearly changes the original agreement; it asserts in the final sentence that "[t]he government *will file* a supplemental memorandum ... when his cooperation with the government is completed" (emphasis added). This positive promise to pursue a sentence reduction when Saunders' cooperation is completed modifies the prior agreement; this promise to act supersedes the complete discretion to act found in the original plea agreement. In other words, the motion changed an agreement that was purely discretionary, as in *Wallace,* to one that is potentially binding, as in *Conner.*[10] Therefore, although the agreement remains contingent on Saunders' "complete and truthful cooperation," the government no longer retains the discretion not to pursue a reduction if these conditions are

---

**9.** *See, e.g., United States v. Best,* 1996 WL 34645 at *2 (4th Cir. January 30, 1996). It is important to note, however, that because a defendant's rights are constitutional, interpretations of plea agreements must reflect broader concerns than those of commercial contract law. *Id.* (citing *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986)).

**10.** *See Conner,* 930 F.2d at 1074 (Conditional obligation created language stating that "[s]hould Mr. Conner provide substantial as-

sistance ... then the United states *will recommend* [a reduced sentence].") (emphasis added); *see also Best,* 1996 WL 34645 at *1 (Conditional obligation created by language stating that " 'if [Best] continues to cooperate with the investigators' the government agreed 'to recommend [a reduced sentence].' ").

Of course, in order to retain its discretion, the government could have done so explicitly, as it did in the original plea, and could have avoided making a positive promise to act which was inconsistent with such discretion.

met.[11] In sum, the motion's language operates to obligate the government to pursue the Rule 35(b) motion if, in the end, Saunders' cooperation is complete and truthful.

■ The operative question, then, is not whether Saunders provided substantial assistance to the government, but rather whether he has satisfied the condition precedent of the plea agreement to provide "complete and truthful cooperation." Both the original plea and the conditional Rule 35(b) motion make clear that the agreement is "contingent upon" such cooperation. In contract terms, the government is not in breach of the plea agreement by failing to pursue a sentence reduction if Saunders has failed to satisfy a condition precedent or committed a prior breach. See United States v. David, 58 F.3d 113, 115 (4th Cir.1995) ("By jumping bail and failing to appear, [defendant] violated the plea agreement and the government's obligation to move for a downward departure based on substantial assistance ended."). According to principles of contract law, the government, as the party asserting the breach, bears the burden of proving, by a preponderance of the evidence, that Saunders' cooperation was not full, complete and truthful. See Conner, 930 F.2d at 1076.[12]

It is clear from the record that the government has carried its burden in this respect. The evidence, although disputed, preponderates in favor of the conclusion that Saunders is not being truthful about his involvement in the Lewis murder. The original witness statements are more credible than their subsequent recantations and Saunders' own story. To begin with, it is significant, and undisputed, that Saunders paid Armstead between $5,000 and $7,000 shortly after the Lewis murder, and his stated reason for doing so is utterly unpersuasive. Saunders claims that this payment was intended to assist Armstead who was hiding at an area hotel. The amount of the payment is simply not consistent with this story; there is no reason why such a large payment was necessary to help Armstead remain hidden. By contrast, the amount of the payment, its timing, and the delivery of the money to Armstead while in hiding is perfectly consistent with the original story told by Armstead and two corroborating witnesses, namely that Saunders had hired Armstead to kill Lewis in exchange for a payment of $7,000. All of the evidence offered by Saunders to support his version of the story is contradicted by other record evidence. He relies only on his own denials and the admittedly inconsistent testimony of the recanting witnesses.[13] Finally, it is

---

11. A literal and narrow reading of the motion might require only that the government file a supplemental memorandum, not pursue a sentence reduction. Yet, in the plea agreement context, fine contractual readings, which might be appropriate in a commercial context, should be avoided and ambiguity must be decided against the government. See Best, 1996 WL 34645 at **2–3.

12. If the operative question were whether Saunders deserved a reduction based on his substantial assistance, Saunders, as the party asserting the breach, would bear the burden of showing that his assistance was substantial and merited a sentence reduction.

13. Saunders' motion includes a signed statement from Armstead dated June 27, 1998 denying that Saunders was involved in the Lewis murder, as well as an undated letter, apparently from Armstead, in which Armstead describes his decision to lie about Saunders in order to avoid a life sentence. According to the government, Saunders' counsel also has an audiotape of a telephone conversation between Armstead and Saunders' mother in late 1998, in which Armstead says Saunders had nothing to do with the murder.

significant that Saunders failed the polygraph examination regarding his involvement in the Lewis murder.[14] Saunders' story is not only unpersuasive, the only truly objective evidence, the polygraph examination, also points to its falsity. In summary, it is more likely than not that Saunders played a role in the Lewis murder that he has not revealed to the government.[15]

This is not a case in which the dispute is whether a defendant's cooperation, although complete and truthful, amounts to substantial assistance. That issue is not reached because a condition precedent to the plea agreement was that Saunders provide complete and truthful cooperation, and the preponderance of the evidence shows that he has not done so. To hold otherwise and reach a different conclusion in this case would provide cooperating defendants with a license to lie about some matters and be truthful about others, yet still argue that the matters about which they were truthful constituted substantial assistance. This would be a nonsensical result, when the agreement is clearly contingent on "complete and truthful cooperation." [16] Saunders did not meet the terms of his plea agreement bargain, and is therefore not entitled to its benefit.

Accordingly,

It is **ORDERED** that defendant's motion to compel specific performance of the plea agreement and the filing of a Rule 35(b) motion is **DENIED**.

It is further **ORDERED** that the government's motion to withdraw the December 15, 1998 Rule 35(b) motion is **GRANTED**.

Should defendant wish to appeal this Order, he must do so within 60 days pursuant to Rules 3 and 4, Fed. R.App. P.

The Clerk is directed to send a copy of this Order to defendant and all counsel of record.

---

14. In the plea agreement, Saunders agreed to "voluntarily submit to polygraph examinations," and "stipulate[d] to the admissibility of the results of this polygraph examination if later offered in a proceeding to determine his compliance with this plea agreement." Plea Agreement at 4, para. 6(d). Thus, there is no bar to considering the polygraph examination results for precisely that purpose.

15. In this situation, where the defendant has presented only scant evidence that his cooperation was full and complete, an evidentiary hearing on the question is not justified. It is not clear, moreover, what such a hearing could provide other than a repetition of Saunders' denials and further inconsistent testimony from the witnesses who originally implicated Saunders in the murder and then recanted.

16. This logic is supported by precedent. In this circuit, the weight of a defendant's substantial assistance may not be considered if the agreement requires complete and truthful cooperation, and the defendant has not been completely truthful. *See United States v. Gerant*, 995 F.2d 505, 509 (4th Cir.1993) (holding, in the context of a nonprosecution agreement, that allowing defendant to argue the weight of his substantial assistance despite his lack of complete candor would wrongly ignore "the express condition in the nonprosecution agreement that [defendant] would come forth with complete truthfulness and candor.")