**UNITED STATES of America,**

v.

**Erskine Larue HARTWELL.**

**No. CRIM. 3:00CR072.**

United States District Court,
E.D. Virginia,
Richmond Division.

Feb. 3, 2004.

David J. Novak, Assistant United States Attorney, United States Attorney's Office, Richmond, VA, for United States.

Robert J. Wagner, Assistant Federal Public Defender, Office of the Federal Public Defender, Richmond, VA, for Defendant.

## MEMORANDUM OPINION

PAYNE, District Judge.

This case is before the Court on the motion of the United States to withdraw a previously filed motion for reduction of sentence, under Fed.R.Crim.P. 35(b), as to Erskine LaRue Hartwell ("Hartwell"). The motion has been fully briefed and counsel have argued their respective positions. For the reasons explained below, the Motion to Withdraw Motion for Reduction of Sentence of the United States is granted. Hartwell's Motion for Evidentiary Hearing to prove a breach of the plea agreement is denied, as is his Motion to Strike the affidavit filed on July 7, 2003.

### PROCEDURAL HISTORY AND STATEMENT OF FACTS

On April 27, 2000, Hartwell, pursuant to a plea agreement, pled guilty to a one-count criminal information charging him with murder-for-hire in violation of 18 U.S.C. § 1958. One condition of the plea agreement obligated Hartwell to provide full, complete and truthful cooperation to the United States. Plea Agreement, at 5 ¶ 9. The plea agreement also provided that the United States reserved its option to

file a Rule 35(b) motion on Hartwell's behalf if, in its sole discretion, the United States determined that such a motion was appropriate. Plea Agreement, at 5 ¶ 10. On August 17, 2000, Hartwell was sentenced to life imprisonment and ordered to pay $5,320 in restitution to the family of the murder victim, Jaime Pereira.

After sentencing, Hartwell provided assistance to the United States in criminal cases pending in Maryland and the District of Columbia. Specifically, Hartwell assisted: (1) authorities in Maryland in their investigation of [ ] [ ]; (2) the United States Attorney's office for the District of Columbia in its capital murder prosecution of [ ] [ ], the alleged leader of a criminal organization dubbed "[ ] [ ]"; (3) the United States Attorney's office for the District of Columbia in the murder prosecution of [ ] [ ], ultimately providing testimony in a criminal case prosecuted in the local District of Columbia courts; and (4) the United States Attorney's office for the District of Maryland by providing testimony against [ ] [ ] ("[ ]").

Hartwell's assistance and cooperation, however, were significantly flawed when, after he testified at the [ ] trial, he told agents with the Federal Bureau of Investigation ("FBI") that he had perjured himself at the trial under pressure from the prosecuting attorney and law enforcement agents in Maryland. Hartwell subsequently retracted that post-trial statement, and, in so doing, reported that he had fabricated the claims of perjury because of his dislike of the law enforcement officials in Maryland who investigated the [ ] case. As a result of this troubling turn of events, as well as the unrelated discovery that Hartwell had withheld information from law enforcement officers about certain homicides, the United States entered into a supplemental cooperation agreement with Hartwell that was memorialized in a

March 14, 2001 letter. In the supplemental agreement, Hartwell admitted that he falsely had told FBI agents that he had perjured himself during the [ ] prosecution. Moreover, the supplemental agreement reflects the fact that the United States took very seriously Hartwell's lies, chicanery and omissions. Nonetheless, the United States agreed to continue to consider filing a Rule 35(b) motion if Hartwell thereafter provided truthful and complete cooperation and assistance.

Notwithstanding that Hartwell's assistance was still ongoing as of August 14, 2001, the United States filed in this Court, on that date, a Motion for Reduction in Sentence in order to comply with the one-year time limitation imposed by Fed. R.Crim.P. 35(b). Several subsequent status reports required by this Court resulted in the determination that, because of the ongoing nature of Hartwell's cooperation, his assistance was not likely to end soon. Thus, the Court set a date for resolving the Rule 35(b) motion; and, at the instance of the Court, the United States filed on March 10, 2003 a memorandum in support of its motion in which the United States recommended a reduction in Hartwell's sentence from life imprisonment to thirty-eight years imprisonment.

On June 6, 2003, Hartwell, expressing grave dissatisfaction with the thirty-eight year imprisonment recommendation made by the United States, filed a *pro se* motion entitled "Motion for Evidentiary Hearing" to which he attached an affidavit styled as Exhibit 6. In that affidavit, Hartwell stated that: "On or about February 26, 2000, AUSA David Novac [sic] from Virginia entered an agreement and promised plaintiff and previous counsel William Purpura Esq., that after receiving a life sentence he was going to reduce plaintiff sentence [sic] to 18 years on a 35(b) motion." Gov't's

Mot. to Withdraw its Mot. for Reduct. of Sent., at 3. The United States replied that Assistant United States Attorney David Novak had not made such an agreement with Hartwell and that, therefore, Hartwell's statements in Exhibit 6 were false. In light of Hartwell's untrue statements in Exhibit 6 and his previous lies and lack of full disclosure, the United States, on July 1, 2003, moved to withdraw its previously filed Motion for Reduction of Sentence. In an apparent attempt to undo the damage caused by his June 6, 2003 *pro se* motion and accompanying affidavit, Hartwell filed a Motion to Strike Affidavit Exhibit 6 on July 7, 2003 wherein he admitted that AUSA Novak did not make the promises that Hartwell swore he made.

Whether the United States can withdraw the previously filed Rule 35(b) motion is the issue here to be decided.

## DISCUSSION

The position of the United States is that, under the plea agreement, it reserved, for its sole discretion, the decision whether to file a motion under Rule 35(b) and that, "[a]lthough the agreement does not specifically address ... [withdrawal] of such a motion, such a decision clearly falls within the Government's inherent ability to evaluate the defendant's entitlement to a reduction of sentence." Gov't's Reply to Def. Mot. in Resp., at 4. Further, the United States contends that the decision to withdraw a Rule 35(b) motion, once made, is reviewable only for bad faith or unconstitutional motive, neither of which are present here. *Cf. Wade v. United States,* 504 U.S. 181, 184–85, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. LeRose,* 219 F.3d 335, 342 (4th Cir.2000). Finally, the United States argues that, before an evidentiary hearing on the motion to withdraw a Rule 35(b) motion may be granted, Hartwell must make a "substantial threshold showing" that the withdrawal resulted from improper or suspect mo-

tives, *cf. LeRose,* 219 F.3d at 342, which, says the United States, Hartwell has not made.

Hartwell mounts a multi-part attack on the positions taken by the United States. First, Hartwell argues that nothing in the plea agreement permits the United States to withdraw the Rule 35(b) motion and thus that withdrawal would constitute breach of the contract. In a related contention, urged for the first time at oral argument, Hartwell contends that the plea agreement was modified by the text of the memorandum supporting the Rule 35(b) motion and that, for this additional reason, withdrawal of the Rule 35(b) motion would constitute a breach of the plea agreement. Next, Hartwell contends that the plea agreement in this case was part of a so-called "global plea agreement" and that, given the nature and extent of Hartwell's cooperation, the global agreement would be frustrated if the motion to withdraw is granted. Hartwell also argues that the United States has acted in bad faith because it has predicated its withdrawal motion on a relatively insignificant matter which he characterizes as a misunderstanding regarding a promised sentence. Additionally, he asserts that, if granted, the motion to withdraw would work a "miscarriage of justice." Finally, Hartwell additionally asks for an evidentiary hearing in order to afford him the opportunity to prove an impermissible breach.

## I. The Terms of the Plea Agreement Illustrate that the United States Retained the Discretion to Withdraw its Rule 35(b) Motion for a Reduction in Sentence.

Hartwell and the United States agree that contract principles apply to the interpretation of plea agreements. *See, e.g., United States v. Wallace,* 22 F.3d 84, 87 (4th Cir.1994); *United States v. Dixon,*

998 F.2d 228, 230 (4th Cir.1993). As a threshold matter, therefore, it is necessary to identify the relevant contract terms and, in this case, it is then necessary to determine whether and how, if at all, the various documents executed thereafter have modified the original plea agreement.

■ The plea agreement quite clearly reserved to the prosecution the unfettered ability to move for a reduction of Hartwell's sentence if, *in the United States' sole discretion,* it determined that such a motion was appropriate. Plea Agreement, at 5 ¶ 10. Hence, the failure or refusal of the United States to move for sentence reduction, absent bad faith or a constitutionally infirm reason, would not be a breach of the plea agreement.

Another document that properly can be considered part of the plea agreement is the March 14, 2001 supplemental agreement and letter prepared by the United States (specifically by the prosecutors in this case and in the District of Maryland) and signed by Hartwell and the lawyers representing him in this case, in the District of Columbia and the District of Maryland.[1] As recounted in the statement of facts, this letter outlined the position of the United States that Hartwell had violated the terms of the plea agreement in this case and in the District of Maryland by withholding information about his criminal activity and by lying to federal agents in Maryland when he told them that he had lied at the [ ] trial. The letter also made clear that the United States would continue to allow Hartwell to cooperate only if he abided by certain conditions additional to those contained in the original plea agreement of April 27, 2000, and the letter reiterated that Hartwell was obligated to cooperate fully and truthfully with the United States.

Importantly for this motion, the letter in no way abrogated the discretion reserved by the United States in the original plea agreement in this case respecting whether to file a Rule 35(b) motion. Indeed, the letter quite clearly evinces the intent of the United States to retain that discretion. *See* Letter of January, 31, 2001, signed March 14, 2001, at 2 ("If Mr. Hartwell agrees to these conditions and abides by them, our offices will continue to *consider* him for a sentence reduction at the appropriate time.") (emphasis added).

■ Thus, it is beyond question that the United States originally had, and retained, the absolute discretion to refuse to file the Rule 35(b) motion on Hartwell's behalf. Settled law in this circuit clearly establishes that the refusal of the United States to move for a sentence reduction is unreviewable unless the defendant shows that the refusal was animated by bad faith or unconstitutional motives. *United States v. Snow,* 234 F.3d 187, 190 (4th Cir.2000).

Of course, the United States chose to exercise its discretion in favor of Hartwell when, on August 14, 2001, it moved for a reduction of sentence under Rule 35. To construe the terms of the plea agreement in this case, therefore, it is necessary also to consider the terms of that motion because, under certain circumstances, the text of a Rule 35(b) motion can alter and modify the terms of a plea agreement. *See United States v. Saunders,* 226 F.Supp.2d 796, 801 (E.D.Va.2002) (recognizing that Rule 35(b) motion can modify terms and conditions of plea agreement). *Cf. United States v. Martin,* 25 F.3d 211, 217 (4th Cir.1994) (noting that subsequent statements and filings of United States can alter terms of original plea agreement).

1. Although Hartwell and his lawyers signed the document on March 14, 2001, the date on the heading of the letter is January 31, 2001. Because of the signature date, however, this document will be referred to as the March 14, 2001 letter.

The Rule 35(b) motion here at issue expressly reserved to the United States the ability to withdraw the motion at a later date. Indeed, Hartwell, through his counsel, agreed that the United States had reserved the ability to withdraw the Rule 35(b) motion if Defendant failed to meet his responsibilities and obligations under the plea agreement. *See* Gov't's Mot. for Reduct. of Sent., at 2 ¶ 5 ("[Defense counsel] agrees that, if the defendant fails to fulfill his responsibilities to the Government, *the Government may withdraw its motion without objection by the defendant.*") (emphasis added). As noted in the recitation of facts, the only reason that the United States filed the Rule 35(b) motion on August 14, 2001 was because the one-year time limit mandated by the rule was fast approaching. The terms of the motion make clear that, notwithstanding that the United States had filed the motion, Hartwell was still in the process of cooperating with the United States. Moreover, by precluding Hartwell's ability to object to any withdrawal of the motion, the United States remained the sole arbiter as to whether Hartwell was meeting his obligations to a degree sufficient to warrant the motion for a reduction in sentence. Stated another way, the August 14, 2001 motion preserved for the United States the broad discretion provided in the original plea agreement respecting whether to move for reduction of Hartwell's sentence; this document, therefore, did not alter the United States' discretion respecting the Rule 35(b) motion.

The United States also filed, on March 10, 2003, a memorandum in support of its Rule 35(b) motion. Hartwell argues that this memorandum further modified the plea agreement and that the withdrawal of the Rule 35(b) motion by the United States violated the terms of the plea agreement as modified by the text of the March 10, 2003 memorandum.

That memorandum discussed, *inter alia,* Hartwell's cooperation in the ongoing case against [ ] [ ]. Specifically, in a footnote, the United States explained that:

Mr. [ ], who is currently in custody serving a sentence for [ ] from the District of [ ], has not yet been indicted for reasons not related to defendant. *See United States v. [ ],* [ ] F.3d [ ] (4th Cir.[2000] ), *cert. denied,* [ ] S.Ct. [ ] (2002). The Government considers defendant's anticipated truthful testimony against Mr. [ ] as the principal basis for the filing of this motion. *If, for any reason, defendant fails to provide truthful testimony during the [ ] prosecution, the Government will take the position that defendant has engaged in a material breach of his plea agreement and his commitment to provide substantial assistance to the Government.*

Gov't's Mem. in Supp. of Mot. for Reduct. of Sent., at 5 n. 1 (emphasis added).

Hartwell contends that, by virtue of that footnote, the United States obligated itself to support and maintain the Rule 35(b) motion unless Hartwell gave untruthful testimony in the [ ] case. Because he remains willing and able to give such testimony, and because the asserted reasons for withdrawing the Rule 35(b) motion are unrelated to the [ ] case, Hartwell asserts that the withdrawal of the Rule 35(b) motion is a breach of the plea agreement as modified by the March 10, 2003 memorandum.

To support this argument, Hartwell points to *United States v. Saunders,* 226 F.Supp.2d 796 (E.D.Va.2002), a case with a procedural posture similar to that in this case. In *Saunders,* the defendant, Troy R. Saunders ("Saunders"), pled guilty to narcotics distribution. The plea was taken pursuant to a plea agreement wherein the United States agreed to consider filing a Rule 35(b) motion on Saunders' behalf if

he cooperated fully in the investigation and prosecution of several crimes. *Saunders*, 226 F.Supp.2d at 797. Saunders cooperated with the United States but, as in this case, his cooperation was not completed within the one-year time limitation of Rule 35(b). Thus, the United States filed a Rule 35(b) motion for reduction of sentence that, much like the motion in Hartwell's case, was conditioned on Saunders' continued cooperation. *Id.* at 798. Subsequent to filing the motion, however, the United States came to believe that Saunders was not being completely truthful and, therefore, it moved to withdraw the motion. Saunders opposed withdrawal and moved for specific performance of the plea agreement and the Rule 35(b) motion. *Id.* at 799.

Saunders did not dispute that, under the original plea agreement in his case, the United States possessed discretion over the decision to file a Rule 35(b) motion. *Id.* at 797. Saunders, however, argued that the terms of the conditional Rule 35(b) motion filed by the United States served to modify this discretion. In support of this proposition, Saunders pointed to language in the Rule 35(b) motion which stated:

> "The defendant's assistance to the government has not been completed as of the filing of this motion.... This motion is expressly contingent upon the defendant's continuing complete and truthful cooperation. *The government will file a supplemental memorandum detailing the defendant's substantial assistance, when his cooperation with the government is completed.*"

*Saunders*, 226 F.Supp.2d at 801 (emphasis added) (quoting motion of United States). The court agreed with Saunders and found that the above-quoted text clearly modified the original plea agreement:

> Absent the final sentence, this motion arguably would not have modified the government's discretion. Yet the motion clearly changes the original [plea] agreement; it asserts in the final sentence that "[t]he government *will file* a supplemental memorandum ... when his cooperation with the government is completed."... This positive promise to pursue a sentence reduction when Saunders' cooperation is completed modifies the prior agreement; this promise to act supercedes the complete discretion to act found in the original plea agreement. In other words, the motion changed an agreement that was purely discretionary ... to one that is potentially binding.... Therefore, although the agreement remains contingent on Saunders' "complete and truthful cooperation," the government no longer retains the discretion not to pursue a reduction if these conditions are met. In sum, the motion's language operates to obligate the government to pursue the Rule 35(b) motion if, in the end, Saunders' cooperation is complete and truthful.

*Id.* at 801–02 (emphasis and brackets in original).

Hartwell argues that footnote 1 of the memorandum filed by the United States on March 10, 2003 in this case had a similar effect on the unfettered discretion reserved in the Rule 35(b) motion respecting the potential withdrawal of the motion for a reduction in sentence. According to Hartwell, although the United States originally had reserved to itself the ability to withdraw its Rule 35(b) motion without objection, the language of footnote 1 obligated the United States to support its Rule 35(b) motion once Hartwell provides truthful testimony in the [ ] prosecution.

This argument fails because the clear language of footnote 1 of the memorandum illustrates that Hartwell's obligations under the plea agreement contract are not limited to providing truthful testimony in the [ ] case. The footnote states that the

"Government considers defendant's anticipated truthful testimony against Mr. [ ] as the *principal basis* for the filing of this motion." Gov't's Mem. in Supp. of Mot. for Reduct. of Sent., at 5 n. 1 (emphasis added). It does not state that the anticipated testimony is the *sole basis* for the United States' filing or that Hartwell's *only* remaining obligation is to provide this testimony. In fact, the term "principal basis" indicates that there are other, albeit less important, obligations remaining. The language of the footnote simply does not support Hartwell's contention that footnote 1 served to relieve him of all of his prior obligations under the plea contract save his obligation to provide truthful testimony in the [ ] matter. Indeed, footnote 1 did nothing to alter the plea agreement and thus the plea agreement remained operative and in full force and effect at the time the United States filed its motion to withdraw the previously filed Rule 35(b) motion.

More importantly, nothing in this footnote—or for that matter in the March 10, 2003 memorandum—served to modify the United States' ability, as specifically retained in the text of the Rule 35(b) motion of August 14, 2001, to withdraw the motion for a reduction of sentence without objec-

tion by Hartwell. The footnote did not supercede or diminish, in any manner, the ability of the United States to withdraw the Rule 35(b) motion without objection. Unlike the language at issue in *Saunders* (the "government *will file* a supplemental memorandum detailing the defendant's substantial assistance, when his cooperation with the government is completed," *Saunders*, 226 F.Supp.2d at 801 (emphasis added)), the language in footnote 1 did not obligate the United States to support its already filed Rule 35(b) motion. At bottom, although *Saunders* and this case share a remarkably similar procedural posture, the language in the plea agreement as modified in *Saunders* is materially different than the language contained in the plea agreement as modified in this case. Hartwell's reliance on *Saunders*, therefore, is misplaced.

For the foregoing reasons, the terms of the plea agreement as it stood on July 1, 2003, the date that the United States moved to withdraw its Motion for Reduction of Sentence, permitted the United States in its discretion, to withdraw the previously filed Rule 35(b) motion.[2] The decision to withdraw its Rule 35(b) motion does not, therefore, constitute a breach of contract.[3]

2. Because the terms of the plea agreement as modified granted the United States the virtually unreviewable authority to withdraw its already filed Rule 35(b) motion, it is unnecessary to reach the argument put forth by the United States that it has the inherent power to withdraw an already filed Rule 35(b) motion without regard to the terms of any plea agreement. *Cf. Snow*, 234 F.3d at 190 (noting that United States' power to move for reductions in sentences is "inherent and expansive" and that its ability to refuse to so move "need not be explicitly reserved in the terms of a plea agreement").

3. The United States Court of Appeals for the Second Circuit has issued an opinion that, at first blush, appears to be on point and to reach a result contrary to the ultimate resolu-

tion reached in this case. In *United States v. Padilla*, 186 F.3d 136 (2nd Cir.1999), the Second Circuit refused to allow the United States to withdraw an already filed motion for downward departure. Applying basic contract principles, the court noted that, although the operative plea agreement gave the United States wide authority respecting the decision to file or withhold originally a motion for downward departure, the agreement was silent as to the prosecution's ability to withdraw such a motion once one was already filed. Citing the decision in *United States v. Dixon*, 998 F.2d 228 (4th Cir.1993), the Second Circuit stated that the United States, as drafter, was " 'responsible for imprecisions or ambiguities' " in the plea agreement. *Padilla*, 186 F.3d at 142 (quoting *Dixon*, 998 F.2d at 230). Because the United

## II. The Plea Agreement in this Case was not a "Global Plea Agreement."

■ Hartwell further argues that the plea agreement in this case was a "global plea agreement"; and that, therefore, contract principles aside, the global nature of the plea agreement limits the power of the United States to withdraw the Rule 35(b) motion. Thus, Hartwell urges the Court to review more rigorously than would ordinarily be warranted the decision to withdraw the Rule 35(b) motion.

Hartwell premises the "global plea" argument principally on the facts that: (1) the plea in Maryland was contingent upon his plea to the Virginia charge; and (2) this Court ordered his sentence in the murder-for-hire case to run concurrently with his Maryland sentence. Additionally, Hartwell points to the assistance that he provided in Maryland and the District of Columbia as evidence of the global nature of the plea agreement. Finally, Hartwell contends that letters submitted by prosecutors in other jurisdictions outlining his assistance is evidence of the global nature of the plea agreement. From that springboard, he argues that:

> to allow the government to withdraw the Rule 35(b) motion would frustrate the purpose of the global plea, would provide the defendant with no recourse for Virginia's unilateral decision to undo a complex and multi-jurisdictional process that has developed over a period of years, and would render all cooperation and efforts the defendant made in the jurisdictions at issue meaningless, and the other motions and Order in federal court to reduce his sentence, a nullity.

Def.'s Mem. in Resp. to Gov't's Mot. to Withdraw Mot. for Reduct. of Sent. at 1–2. In support of this argument, Hartwell relies on the decision in *United States v. Nguyen*, 932 F.Supp. 98 (S.D.N.Y.1996), for the proposition that the United States' broad power to refuse to bring motions for downward departures is more limited when a global plea is involved. The argument that the plea agreement in this case is "global," however, is unfounded and the decision on which Hartwell relies is not pertinent here.

In *Nguyen*, the court addressed the question "whether a sentencing judge may depart downward, over the objection of the local United States Attorney, on the basis of a '[§ ]5K1.1 letter' (motion) in favor of the same defendant but written by a different prosecutor, in a different jurisdiction, but in a similar case." *Nguyen*, 932 F.Supp. at 99. The defendant, Nhat Duc Nguyen ("Nguyen"), faced parallel prosecutions in adjoining federal districts—the Southern District of New York and the District of New Jersey. A jury convicted Nguyen in the New York case. Before his scheduled trial in New Jersey on related charges, Nguyen entered into a cooperation agreement with the United States Attorney in New Jersey. As a result of this cooperation, the United States Attorney in New Jersey, pursuant to U.S.S.G. § 5K1.1, submitted a motion for downward departure to the New Jersey District Court. *Id.*

The United States Attorney for the Southern District of New York filed no similar § 5K1.1 motion with respect to the sentencing hearing in Nguyen's New York case. In fact, that office opposed a down-

---

States neglected to reserve expressly in the plea agreement its right to withdraw an already filed motion for a downward departure, the court refused to imply such a right. *Id.* However, because the motion filed in this

case did reserve to the United States the ability to withdraw its Rule 35(b) motion, the *Padilla* case is inapposite. Thus, it is not necessary to decide whether the Second Circuit's reasoning in *Padilla* should apply here.

ward departure in Nguyen's New York case. Nevertheless, Nguyen argued that the § 5K1.1 letter filed by the New Jersey United States Attorney's Office authorized the New York judge to depart downwards in sentencing. The district court in New York agreed with Nguyen and held that it could rely on the § 5K1.1 motion filed in the adjoining district in making a downward departure in Nguyen's case. Pointing, therefore, to the unique circumstances of the case, the court held that it could consider the New Jersey § 5K1.1 motion during Nguyen's New York sentencing. *Id.* at 100.

*Nguyen*, however, is distinguishable from this case. In *Nguyen*, the United States Attorney in New Jersey had submitted an actual § 5K1.1 letter to the New Jersey court. Although the United States Attorneys for Maryland and the District of Columbia submitted letters in this case that outlined Hartwell's cooperation in prosecutions in those districts, neither United States Attorney filed an actual Rule 35(b) or § 5K1.1 motion in their respective jurisdictions. It also is true that Assistant United States Attorney Timothy Heaphy of the District of Columbia submitted a letter in *support* of the original Motion for Sentence Reduction filed in this case. As explained by the government, however:

> the genesis of this unsigned letter was the Court's suggestion during a conference call on March 18, 2003, that the defense establish the full extent of the defendant's cooperation with the District of Columbia through affidavit or other written form. As a courtesy to [defense counsel], [AUSA Novak] asked AUSA Heaphy to draft a letter detailing the defendant's cooperation in lieu of his testimony. The unsigned letter is simply a description of the full extent of the defendant's cooperation with the United States Attorney's Office for the District

of Columbia, not a motion for downward departure.

Gov't's Reply to Def.'s Mem. in Resp. to Gov't's Mot. to Withdraw its Mot. for Reduct. of Sent., at 3. Moreover, the United States notes that AUSA Heaphy now supports its motion to withdraw the Rule 35(b) motion in this case. Thus, unlike the situation in *Nguyen*, where the New Jersey United States Attorney's office had submitted an actual § 5K1.1 motion that was opposed by the New York office, the United States speaks with one voice in this case: both United States Attorney's offices support the Motion to Withdraw the Motion for Reduction of Sentence. For these reasons, *Nguyen* is not helpful to Hartwell.

Finally and more basically, the terms of the plea agreement in this case undermine Hartwell's effort to construe the plea agreement as "global." The plea agreement states that: "Except where specifically noted, this plea agreement binds only the United States Attorney's Office for the Eastern District of Virginia and the defendant; it does not bind any other prosecutor in any other jurisdiction." Plea Agreement, at 3 ¶ 5. Although the plea agreement required the United States to recommend to this Court that the sentence in this case should run concurrently with any sentence that the Defendant received in Maryland, it did not bind in any way prosecutors in other districts. And, nothing else in the plea agreement has the effect that Hartwell urges.

Considering that the text of the plea agreement in this case cannot accurately be described as "global" and the factual differences between this case and *Nguyen*, Hartwell's reliance on *Nguyen* and the "global plea" theory is misplaced. For that reason and because the plea agreement simply does not support the contention that it is a "global agreement" that affects the ability of the United States to

withdraw its Rule 35(b) motion, the so-called "global plea agreement" argument is rejected.

### III. The Defendant is Unable to Satisfy the Substantial Threshold Showing Prerequisite to the Holding of an Evidentiary Hearing.

■ Hartwell has moved the Court to order an evidentiary hearing in order to determine whether the decision of the United States to withdraw its Rule 35(b) motion is otherwise proper. Although the United States Court of Appeals for the Fourth Circuit has not specified the standard for entitlement to an evidentiary hearing on a motion to withdraw a Rule 35(b) motion, it has outlined the framework for judicial review of the refusal of the United States to make such a motion in the first instance. As explained above, the plenary power of the United States to file a Rule 35(b) motion in the first instance in Hartwell's case was replaced with the plenary power to withdraw such a motion once filed. Therefore, the decisional law respecting judicial review of the refusal of the United States to make a Rule 35(b) motion also provides the appropriate framework for analyzing the related issue presented in this case.

■ Before a court may order discovery or hold an evidentiary hearing on the United States' refusal to make a motion for a reduction in sentence, the defendant must make a "substantial threshold showing" that the refusal resulted from improper or suspect motives. *United States v. LeRose*, 219 F.3d 335, 342 (4th Cir.2000). In particular, a court may review the decision to refuse to move for a reduction in sentence only if there is a substantial showing that the refusal was the result of bad faith or unconstitutional motives. *Snow*, 234 F.3d at 190. Furthermore, the refusal to move for a reduction in sentence need only be rationally related to a legiti-

mate government purpose. *Wade v. United States*, 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992). Indeed, even if the United States concedes that a defendant has provided full and truthful cooperation, that fact, standing alone, does not automatically entitle a defendant to a substantial assistance motion. *United States v. Wallace*, 22 F.3d 84, 87 (4th Cir.1994). At bottom, absent a substantial threshold showing that the refusal to move for a reduction in sentence is based on bad faith or unconstitutional motives—*e.g.*, race, religion, gender—or is not rationally related to a legitimate government end, this Court cannot review it.

Hartwell does not assert that the withdrawal decision here at issue was prompted by an unconstitutional motive. Rather, he argues that the decision to withdraw the Rule 35(b) motion was motivated by bad faith. As Hartwell observes, if the Rule 35(b) motion is withdrawn, he will serve a life sentence notwithstanding his not insubstantial cooperation with the United States; and, says Hartwell, the withdrawal decision was prompted by a relatively trivial act: a lie that he promptly sought to withdraw. Withdrawal under those circumstances, says Hartwell, constitutes bad faith. Hartwell also contends that, because his role in the underlying murder-for-hire was minor, the United States is acting in bad faith in seeking to withdraw the Rule 35(b) motion and allowing his life sentence to stand. These contentions are without merit.

The record here shows that the decision to withdraw the Rule 35(b) motion was made principally because of Hartwell's lies, the last of which was made in Hartwell's *pro se* memorandum filed on June 6, 2003 (which he attempted to retract on July 7, 2003 after the United States moved to withdraw the Rule 35 motion). The undisputed record is that Hartwell has lied to

the United States on two occasions. Of course, it appears as if these lies were later retracted. However, because of the lies and retractions, Hartwell has created abundant, and very effective, fodder for cross-examination by defense lawyers in any case in which he testifies, including the [ ] prosecution. Thus, Hartwell's lies and retractions have reduced significantly, if not completely, the value of his cooperation to the United States. Perhaps the most significant of Hartwell's lies is the one that he made in his *pro se* memorandum respecting the motion for reduction of sentence because there he demonstrated that he would lie to a court for the explicit purpose of reducing his sentence. What jury, one reasonably might ask, would ever believe Hartwell after he told a lie under that circumstance and for that purpose? The decision of the United States not to forgive this lie, as it had the earlier one, is certainly not an act of bad faith.

Moreover, the decision to withdraw the Rule 35(b) motion was rationally related to legitimate governmental interests, namely, that Hartwell's repeated lies undermined the effectiveness of his cooperation and served to undermine the administration of justice. The decision in *United States v. Butler*, 272 F.3d 683 (4th Cir.2001), is instructive. There, the United States conceded that the defendant had provided it with substantial assistance. The defendant, however, also made threats to various co-defendants during this period of substantial assistance. For this reason, the United States refused to move for a downward departure. The Fourth Circuit found that this refusal was rationally related to a legitimate government end: defendant's threats towards his co-defendants were the very "antithesis of substantial assistance." *Butler*, 272 F.3d at 686. The threats undermined and obstructed the judicial process and thus undermined the value of any assistance defendant provided. The Fourth Circuit, therefore, found that the decision to refuse to move for a substantial cooperation motion was rationally related to a legitimate government interest—namely not rewarding with reduced sentences individuals who thwart the effectiveness of the criminal justice system. *Id.*

Similarly, the decision to withdraw the motion here is rationally related to a legitimate government end. Hartwell's repeated lies and retractions, similar to the threats made by the defendant in *Butler*, served to undermine the effective operation of the criminal justice system and to diminish the value of Hartwell's cooperation. The decision to withdraw the motion, therefore, was rationally related to the legitimate governmental purposes of requiring truth-telling in the criminal justice process and ensuring the effectiveness of Hartwell's cooperation. It serves the additional valid governmental end of serving notice on cooperating defendants that lying has serious repercussions. This outcome, therefore, encourages other cooperating witnesses to be truthful.[4]

4. Hartwell also asserts that, due to his role in the offense of conviction and his personal characteristics, allowing a life sentence to stand in his case would constitute a "miscarriage of justice." As an initial matter, these facts are simply irrelevant to the resolution of the issue here because whatever the Court may think about the United States' decision to withdraw its Rule 35(b) motion, the decision is, excepting bad faith and unconstitutional motives, solely for the United States to make. Moreover, on the merits, Hartwell's crime and his personal traits have already been considered adequately by the Court in sentencing him originally. At sentencing, the Court found that a life sentence was in the interest of justice and consistent with the United States Sentencing Guidelines—these findings are equally applicable at this stage of the proceedings.

For the foregoing reasons, Hartwell has failed to make out a substantial threshold showing that the United States made its decision to withdraw the Rule 35(b) motion because of bad faith or as the result of unconstitutional considerations. Accordingly, no evidentiary hearing is appropriate.

### CONCLUSION

■ For the foregoing reasons, the Motion to Withdraw Motion for Reduction of Sentence of the United States (Docket No. 47) is hereby GRANTED. Thus, the Sealed Motion of the United States of August 14, 2001 (Docket No. 17) is hereby withdrawn. Furthermore, the Defendant's Motion for an Evidentiary Hearing in this matter is DENIED.[5]

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.

---

**5.** Hartwell's Motion to Strike his affidavit and its Exhibit 6 (Pleading No. 48) is denied because it was a basis for the subsequent motion of the United States to withdraw its Rule 35 motion and granting the Defendant's motion would serve no valid purpose. Indeed, because the Defendant's affidavit contains a material lie which is significant in resolving the motion to withdraw the sentence, it would be inappropriate to strike the pleading.