**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melvin C. SIMPSON, Defendant–
Appellant.**

No. 92–1138.

United States Court of Appeals,
Seventh Circuit.

Argued June 4, 1992.

Decided Sept. 3, 1992.

Rehearing Denied Sept. 22, 1992.

Barry R. Elden, Kathleen T. Murdock (argued), Asst. U.S. Attys., Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Joseph J. Bruce (argued), Rockford, Ill., for defendant-appellant.

Before BAUER, Chief Judge, RIPPLE, Circuit Judge, and WOOD, Jr., Senior Circuit Judge.

BAUER, Chief Judge.

On the afternoon of July 5, 1989, when Rockford, Illinois, Police Officer Frank Ingardona was on regular patrol, he received a call to go to 1221 School Street to investigate a report of a domestic disturbance involving a gun. Officer Richard Cunningham received the same call, and both officers arrived simultaneously. At the address given, a duplex apartment building, the officers were met at the front door by two women, Regina Simpson and her sister, Cheryl Grey. When the officers approached, the women told them to come in. When he entered the first floor apartment, Cunningham noticed that two small children also were present, sitting on a couch in the living room, and a third child stood near Regina. That child, the officers learned, is Regina's daughter, Jamie Grey. Regina then told the officers what happened.

Regina's husband, defendant Melvin C. Simpson, ordered Jamie, his step-daughter, to clean up some spilled water in the kitchen. When Jamie refused, Simpson stated angrily that he was sick of her and threatened to hit her. Regina and Cheryl walked into the kitchen in time to see Simpson run toward the bedroom, saying that he "ain't got to take this." Regina saw Simpson rummage hurriedly through a dresser drawer in the bedroom. When he walked out of the bedroom he was loading a magazine of ammunition into a .22 caliber semi-automatic pistol. He walked over to Jamie, pointed the gun at her head, and said "I'll blow your goddamn head off." Immediately, Regina moved in and pushed the gun down. As she told him she was going to call the police, Simpson left the house through the front door. He left with the gun still in his hand. At the time the officers arrived, Simpson had not returned.

At some point during Regina's recitation, Simpson returned to the apartment; he no longer had the pistol. Additionally, three other officers arrived, Farrar, Pittz, and Swanson. Cunningham asked Regina to show him where the gun had been hidden. While Farrar stayed with Simpson in the living room, Regina took Cunningham into the bedroom and showed him the dresser drawer. In the drawer, Cunningham found three full boxes of .22 caliber ammunition. He returned to the living room and asked Simpson if he owned any weapons. Simpson answered that the only gun he owned was behind the couch. Cunningham then retrieved a .22 caliber rifle from behind the couch. He asked Simpson if he possessed a firearm owner's identification card for the rifle, and when Simpson said he did not, Cunningham placed him under arrest.

While Regina was showing Cunningham the dresser drawer, one of the children, a boy Ingardona judged to be between eight and ten years old, told him that he knew where Simpson hid the gun and he would show it to him. Ingardona, Pittz, and Swanson followed the boy to the upstairs apartment by way of an exterior staircase behind the building. The boy, Rico Williams, is defendant's nephew. He lived in the upstairs apartment with his mother (defendant's sister, Goldie Williams), his step-father (Melvin Jones), and his brother Terrell. Ingardona followed Rico into one of the upstairs bedrooms. When Rico pointed to the bed, Ingardona lifted a pillow and found a .22 caliber semi-automatic pistol. It was loaded and cocked.

A federal grand jury sitting in Rockford, Illinois, returned a one-count indictment against Simpson on September 26, 1989. The sole charge contained in the indictment was that Simpson, having been previously convicted of a felony, possessed firearms, specifically a .22 caliber semi-automatic pistol and a .22 caliber bolt action rifle, in violation of 18 U.S.C. § 922(g). Simpson pleaded not guilty. A jury found Simpson guilty on October 30, 1991. The district court sentenced him to a prison term of fifteen years, three years supervised release, and a $50 special assessment.

Simpson now appeals, raising issues directed at the district court's pretrial ruling denying his motion to suppress, his conviction, and his sentence. We affirm.

## I.

■ We can dispose of Simpson's challenge to the district court's pretrial ruling in short order. At the conclusion of an evidentiary hearing, the judge denied Simpson's motion to suppress his statement, in response to Officer Cunningham's inquiry, that "the only gun I own is behind the couch." Simpson argues that he was in custody at the time but had not been advised of his constitutional rights. For that reason, he continues, the statement was inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Assuming, without deciding, that Simpson was in custody, the statement nonetheless was admissible. Under *New York v. Quarles*, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), considerations of safety to law enforcement officers and others nearby justify an officer's inquiry about the location of a gun without first advising a suspect of his *Miranda* rights. *Id.* at 651, 104 S.Ct. at 2628. *See also Anderson v. Thieret*, 903 F.2d 526, 531 (7th Cir.1990). In this case, Cunningham was in Simpson's apartment responding to a domestic disturbance involving a gun. In addition to the two women who answered the door, he observed two small children inside the apartment. He was told that Simpson left the apartment carrying a gun; when he returned he no longer had it. The ques-

tion was appropriate under the circumstances, and Simpson's answer properly was admitted at trial.

## II.

We begin our discussion of Simpson's challenges to his conviction by noting that in order to convict under 18 U.S.C. § 922(g), the government only needed to produce sufficient evidence to persuade the jury beyond a reasonable doubt that Simpson possessed either the handgun *or* the rifle, or both. The jury was so instructed. *See* Trial Transcript ("Tr.") at 156. Simpson's uncontroverted statement to Cunningham that the gun he owned was behind the couch was sufficient evidence for the jury to convict him solely for possession of the rifle. For that reason, we need not consider Simpson's various challenges directed at the evidence establishing his possession of the handgun.

■ Based on multiple allegations, Simpson argues that he was denied effective assistance of counsel at his trial, in violation of the Sixth Amendment. To succeed on this claim, Simpson must overcome the strong presumption that counsel was effective. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). If he can show that counsel's assistance failed to meet constitutional requirements and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" *id.*, he can overcome that presumption. We proceed mindful that "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

■ One of the bases of Simpson's claim is that counsel failed to move to strike juror Charles Wilkinson for cause after Simpson informed counsel that Wilkinson was a guard at the St. Charles Correctional Institution while Simpson was an inmate there. Simpson raised this issue in his motion for a new trial, after which the district court ordered an evidentiary hearing. At that hearing, Simpson testified

that he knew Wilkinson from one of his three periods of incarceration as a juvenile at St. Charles. Wilkinson gave him his job assignments. Five or six times, when he refused to do his assigned work, he was punished, but Simpson did not say that Wilkinson was responsible for those punishments. On one occasion, Simpson tried to run away from St. Charles, but did not know whether Wilkinson was among those involved in chasing him.

Wilkinson testified that he was employed at St. Charles as a supervisor in the grounds and maintenance department from 1967 to 1977. During that time, his only contact with the inmates there was to hand out job assignments. Beyond that he had no relationship with them. Wilkinson said he had no recollection of Simpson from his employment at St. Charles. Nor had he any recollection of Simpson trying to escape or of recommending punishment for him. An attempted escape was not an unusual occurrence at St. Charles. Wilkinson, simply put, just did not remember Simpson at all.

The district court found Wilkinson's testimony credible, and we see no error in that finding. On this record, therefore, we do not see how Simpson was prejudiced by counsel's failure to strike a juror who had no recollection of him, or how the outcome would have been different had Wilkinson been removed. This argument fails.

Simpson's remaining claims of ineffective assistance of counsel also fail. He claims that two weeks before trial he informed counsel he wanted a new attorney, that counsel failed to act on this request, and that counsel failed to consult with him during jury selection. Because Simpson failed to raise these claims before the district court, as he concedes in his reply brief, they are waived here. *United States v. Ray*, 828 F.2d 399, 420 (7th Cir.1987), *cert. denied*, 485 U.S. 964, 108 S.Ct. 1233, 99 L.Ed.2d 432 (1988). Additionally, he alleges that counsel failed to call certain witnesses on his behalf. Had they testi-

fied, he offers, their testimony would have attacked the government's evidence that he possessed the handgun. As we noted above, however, we need not reach this issue because of the overwhelming evidence to support Simpson's conviction solely for possession of the rifle.[1] His final claims of ineffective assistance, that Regina also possessed the rifle and that at the time of the offense he did not live at 1221 School Street, are without merit.

■■■ Next, Simpson argues that the district court erred when it granted the government's oral motion *in limine* to prohibit defense counsel from commenting in closing argument about the government's failure to call the defendant's wife, Regina Simpson, as a witness. In his opening statement, the prosecutor told the jury it would hear from her and outlined her testimony. At trial, however, the government decided not to call her. This argument is specious. First, Simpson's counsel did not object to the motion. Instead, in response to the court's inquiry if counsel intended to comment on it, counsel responded, "Well, Judge, I've prepared my closing argument, and I don't recall that I—." Trial Tr. at 123. The court's statement after counsel trailed off cannot be characterized as a grant of the motion: "Well, I would suggest that both sides stay away from it, and that way you don't have a problem." *Id.* Second, even if the court's statement could be construed as granting the motion, whether to allow comment on a missing witness is within the sound discretion of the trial court. *United States v. Sblendorio*, 830 F.2d 1382, 1394. This court has cautioned that when the witness is equally available to both sides, the preferred practice is to preclude the argument rather than to leave the jury free to speculate about a lot of non-evidence. *Id.* (quoting *United States v. Keplinger*, 776 F.2d 678, 703 (7th Cir.1985)). The district court did not abuse its discretion.

---

1. For the same reason, we need not reach Simpson's claim that the district court erred in allowing Officer Ingardona to testify to what

Rico Williams told him about the location of the handgun.

## III.

Finally, Simpson argues that he was incorrectly sentenced under 18 U.S.C. § 924(e) rather than the Sentencing Guidelines. Section 924(e) provides, in part, that a defendant convicted of 18 U.S.C. § 922(g) who has three prior violent felony convictions shall be imprisoned for at least fifteen years. Because Simpson has five previous convictions for burglary, the district court imposed the mandatory minimum sentence of fifteen years. Simpson claims that three of those five prior convictions should not be considered predicate offenses for § 924(e) purposes: his convictions in 1976 and 1983 for burglary, because he was not convicted of generic burglary as required by *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); and a 1974 conviction, because he was under 18 years of age. Simpson can succeed in this argument only if all three of the challenged convictions cannot be used as predicate offenses under § 924(e). Conversely, if any one of the three is a valid predicate offense, his argument fails.

In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court held that a predicate felony constitutes burglary for purposes of § 924(e) "if either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Id.* at 602, 110 S.Ct. at 2160. Generic burglary, the Court concluded, is "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599, 110 S.Ct. at 2158. The Illinois burglary statute under which Simpson was convicted provides, in part: "A person commits burglary when without authority he knowingly enters or without authority he remains within a building, ... *or any part thereof,* with intent to commit therein a felony or theft." Ill.Rev.Stat. ch. 38, para. 19-1 (emphasis ours). Inclusion of the italicized language, Simpson claims, results in a definition of burglary substantially broader than generic burglary, and for that reason his 1976 and 1983 convic-

tions cannot be considered as predicate offenses.

Indeed, the Illinois statute does include the "or any part thereof" language. But *Taylor* directs us to look at either the statute, *or* the charging paper and the jury instructions. The Information charging Simpson with burglary in the 1976 case states that Simpson, "without authority, knowingly entered into the building of Illinois National Bank and Trust Company located at 410 Green Street, Rockford, Illinois, with intent to commit therein a theft or felony...." Record Document ("Rec. Doc.") 134, Exhibit 2. The jury in that case was instructed, "A person commits the crime of burglary who, without authority, knowingly enters a building or any part thereof with intent to commit theft." Rec. Doc. 132, Exhibit A. But the key instruction, the elements instruction, reads: "To sustain the charge of burglary, the State must prove the following propositions: First, That the defendant, Melvin Simpson, knowingly entered a building at 410 Green Street, Rockford, Illinois...." *Id.*, Exhibit B. So both the charging paper, and the specific elements the jury was required to find to convict, contain the language of generic burglary alone. Under *Taylor*, therefore, the 1976 conviction is a valid predicate offense for § 924(e). Having found at least one valid predicate offense to support Simpson's statutory sentence, we need not address the remaining two convictions he challenges.

## IV.

For the foregoing reasons, Simpson's conviction and sentence are

AFFIRMED.