**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Leon A. KING, Defendant–Appellant.**

No. 95–1068.

United States Court of Appeals,
Seventh Circuit.

Argued June 14, 1995.

Decided Aug. 1, 1995.

James E. Beckman, Frances Hulin (argued), Office of the U.S. Atty., Springfield, IL, for plaintiff-appellee.

Carol J. Reid (argued), Springfield, IL, for defendant-appellant.

Before COFFEY, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Leon A. King pled guilty to possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g). The district court held that King's three prior convictions for burglary made him an armed career criminal under 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4B1.4 and imposed the statutory minimum sentence of 180 months of imprisonment and 5 years of supervised release. On appeal, King argues

that the government breached his plea agreement by failing to move for a downward departure based on his assistance to authorities. In addition, he contends that he should not have been sentenced as an armed career criminal. We affirm.

## I. Standard of Review

■ King did not present any of his appellate arguments to the district court. Thus, we review his claims for plain error. *United States v. Brassell*, 49 F.3d 274, 277 (7th Cir.1995); *United States v. Maggi*, 44 F.3d 478, 484 (7th Cir.1995). Under the plain error standard, we will grant relief only if we are convinced that any error committed affected the outcome of King's sentencing hearing. *See United States v. D'Iguillont*, 979 F.2d 612, 614 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1873, 123 L.Ed.2d 492 (1993).

## II. Sentencing Recommendation

■ King contends that the government breached its promise to recommend a sentence no higher than "the middle of the final applicable sentencing guideline range." At first blush this allegation seems plainly untrue: the government recommended the lowest possible sentence (absent a departure)— the statutory minimum of 180 months.[1] King argues, however, that the interplay between the guidelines and the statutory minimum turn the government's recommendation into a breach. His sentencing range, based on an adjusted offense level of 30 and a criminal history category of VI, was 168 to 210 months. The middle of this range is 189 months. Still it appears that the government fulfilled its bargain, because it recommended a sentence of 180 months. But King's argument takes one additional step.

At sentencing, the government stated that the middle of the range was 195 months. This number came from substituting the statutory minimum of 180 months as the bottom of the range, yielding a range of 180–210 months. King asserts that the words "final

applicable sentencing guideline range" in the plea agreement refer to the guideline range *before* any statutory minimum is factored in, so the government's calculation of the middle of the range was incorrect. Again, we may ask why this dispute is material: the actual recommendation of 180 months was below the middle of the range regardless of who prevails on this point. King supplies an answer, or at least an argument. The government stated that it was recommending the statutory minimum because of King's assistance to authorities. According to King, by recommending a 180–month sentence when it thought the middle of the range was 195 months, the government implied that he deserved fifteen months' credit for his assistance. If the middle of the range was 189 months, fifteen months' credit would be 174 months, which is below the statutory minimum and would require a government motion for a departure under 18 U.S.C. § 3553(e). King argues that, because (1) the middle of the range is 189 months and (2) the government determined that he deserved fifteen months' credit for his assistance, the government breached the plea agreement by not moving for a departure.

First, we do not agree with King that the middle of range was 189 months rather than 195. Section 5G1.1 of the guidelines provides that the sentencing range shall be adjusted to take statutory minima and maxima into account. Under U.S.S.G. § 5G1.1(c)(2), King's final applicable sentencing range becomes 180–210 months. *Cf. United States v. Padilla*, 23 F.3d 1220, 1222 n. 3 (7th Cir. 1994) (when guideline range falls below statutory minimum, statutory minimum becomes guideline range under § 5G1.1(b)); *United States v. Hayes*, 939 F.2d 509, 512 (7th Cir. 1991) (statutory minimum of five years was guideline sentence under § 5G1.1(b) despite original range of 21–27 months), *cert. denied*, 502 U.S. 1042, 112 S.Ct. 896, 116 L.Ed.2d 798 (1992). Thus, the middle of his final applicable range was 195 months.

---

1. The district court may not impose a sentence below the *statutory minimum* unless the government makes a motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 for a departure based on the defendant's substantial assistance to authorities. *United States v. DeMaio*, 28 F.3d 588, 591 (7th Cir.1994).

█ More fundamentally, even if the middle of range was 189 months, we do not see how the government's actions translate into a breach of the plea agreement. The prosecutor fulfilled his duty by recommending a sentence no higher than the middle of the range; whether the middle was 189 or 195 months is irrelevant. In addition, the plea agreement specifically states that the decision of whether to move for a downward departure rests in the "sole discretion" of the government. Even if the prosecutor felt that King deserved fifteen months' credit but recommended that he be given only nine months less than the middle of the range (which, essentially, is the argument here), we are powerless to review that decision unless the prosecution acted based on an unconstitutional motive, such as King's race or religion. *See Wade v. United States*, 504 U.S. 181, 185–86, 112 S.Ct. 1840, 1843–44, 118 L.Ed.2d 524 (1992).[2] King does not allege an unconstitutional motive, much less make the "substantial threshold showing" necessary to entitle him to an evidentiary hearing. *See id.* at 186, 112 S.Ct. at 1843. Of course, if the government promises during the plea negotiations to move for a downward departure, that promise may be specifically enforced. *See United States v. Lewis*, 896 F.2d 246, 249 (7th Cir.1990). But that was not the case here.[3] Thus, we may not review the government's decision to recommend the statutory minimum rather than move for a downward departure.

## III. Incarcerated Status

Next, King argues that the government violated his due process and equal protection rights by refusing to make the substantial assistance motion because he was incarcerated. In the plea agreement, the government promised to evaluate King's assistance and determine whether to move for a departure depending on its "evaluation of the nature, extent, and value of the defendant's assistance, including his truthfulness." King contends that the government based its decision solely on the fact that he was incarcerated and thus breached its agreement to decide based on the "nature, extent, value ... [and] truthfulness" of the cooperation rendered.

█ The government states that its decision not to make the substantial assistance motion was based on an evaluation of King's overall assistance and ability to cooperate— his incarceration was simply one factor. King counters that the prosecutor's statements at sentencing reveal that the government based its decision on the fact that he was incarcerated.[4] While the government's

---

2. A few courts have indicated that the prosecutor's refusal to file a substantial assistance motion may be reviewable if irrational or withheld in bad faith. *United States v. Stockdall*, 45 F.3d 1257, 1260 (8th Cir.1995); *United States v. Knights*, 968 F.2d 1483, 1487 (2d Cir.1992); *United States v. Goroza*, 941 F.2d 905, 908 (9th Cir.1991); *but see United States v. Forney*, 9 F.3d 1492, 1502 n. 4 (11th Cir.1993) (failure to file substantial assistance motion reviewable for unconstitutional motive only). In the instant case, there is no evidence that the prosecutor acted irrationally or in bad faith.

3. The Ninth Circuit has held that in an extreme situation, a court may order a downward departure for substantial assistance without a government motion if otherwise the defendant will have received no consideration for his assistance. *See United States v. De La Fuente*, 8 F.3d 1333, 1340 (9th Cir.1993); *United States v. Goroza*, 941 F.2d 905, 908 (9th Cir.1991). We have never recognized such an exception to the government motion requirement, and moreover, King's case does not present an extreme circumstance. In return for his cooperation, King received a sentence of 180 months when his guideline range allowed up to 210 months. King benefitted significantly from his decision to cooperate with the government.

4. At sentencing, the prosecutor stated: "I don't believe, in my estimation, that the defendant rendered, quote, substantial assistance, end quote. That is certainly not casting any aspersions on him that he was necessarily withholding any information.... As circumstances may have it, in different cases different people may have different information and more helpful information than others do, and I believe that it's safe to say that a person incarcerated generally is less able, because of his situation, to assist the Government than one who is not incarcerated. Mr. King was incarcerated and has been throughout the proceedings in this case, and certainly could not and was not going to be let out to perform anything. So he may have been a victim, so to speak, of his situation ... in not being able to render as much cooperation as someone else may be. But the fact still remains that the evaluation of the cooperation, in my estimation, does not rise to the level of quote, substantial assistance, unquote."

statements imply that King's incarceration was a factor in the decision not to grant him a departure, they do not conclusively establish that it was the only factor. Even assuming, however, that the government declined to move for a departure because he was incarcerated, King may not claim a denial of equal protection. Prisoners are not a suspect class, *Wilson v. Giesen*, 956 F.2d 738, 744 (7th Cir.1992); *Pryor v. Brennan*, 914 F.2d 921, 923 (7th Cir.1990), so the government may treat incarcerated defendants differently as long as its decisions are "rationally related to a legitimate ... [government] interest." *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). Incarcerated defendants cannot, on balance, provide as much assistance as defendants who are free pending trial. The government could rationally decide not to request departures for incarcerated defendants because they often are not in a position to provide substantial assistance. King's equal protection rights were not violated.[5]

King's due process argument is more substantial. He alleges that, when he entered the plea agreement, the government did not inform him that his incarceration would affect his chances of receiving a departure for substantial assistance. While the plea agreement leaves the ultimate decision of whether to make a substantial assistance motion to the "sole discretion" of the government, King argues that the prosecutor possessed a duty to inform him that his incarceration would significantly reduce his chances of receiving a substantial assistance departure. *See Santobello v. New York*, 404 U.S. 257, 261–62, 92 S.Ct. 495, 498–99, 30 L.Ed.2d 427 (1971) (when a guilty plea is induced by promises, "the essence of those promises must in some way be made known").

■ If King was not fairly informed of the consequences of his decision to plead guilty, a due process violation has occurred.

*Mabry v. Johnson*, 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The remedy for this violation would be the withdrawal of his plea. King, however, disclaims any desire to revoke his plea agreement. Instead, he requests that we allow the district court to depart without the benefit of a substantial assistance motion as specific performance of the plea agreement. But King has no right to this remedy, because the government did not make a promise that can be specifically enforced. The language of the plea agreement leaves the decision of whether to move for a departure to the discretion of the prosecutor. Plea agreements are interpreted according to the reasonable expectations of the parties. *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.1990), *cert. denied*, 498 U.S. 843, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990); *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985). No reasonable person could construe the language leaving the decision to the "sole discretion" of the prosecution as a binding promise to make a substantial assistance motion. *Cf. United States v. Stockdall*, 45 F.3d 1257, 1259–60 (8th Cir.1995); *Goroza*, 941 F.2d at 910; *Sophie*, 900 F.2d at 1071–72.

■ In addition, the failure to inform King of the effect of his incarceration is not the type of constitutional violation that, under *Wade*, would allow us to review the prosecutor's decision not to file the motion. The *Wade* Court recognized that limited review of the government's decision not to file a substantial assistance motion is necessary because prosecutors might potentially deny departures to defendants due to a discriminatory purpose, such as racial, ethnic, or religious bias. *Cf. Wade*, 504 U.S. at 186, 112 S.Ct. at 1844; *Wayte v. United States*, 470 U.S. 598, 608–09, 105 S.Ct. 1524, 1531–32, 84 L.Ed.2d 547 (1985). King does not allege prosecutorial bias; rather, he contends that the government failed to fully inform him of the policy of not requesting departures for incarcerated

---

5. Because the government's decision was rationally related to a legitimate interest, this case is different from *Rinaldi v. Yeager*, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). In *Rinaldi*, the Supreme Court invalidated New Jersey's policy of requiring prisoners (but not other indigents) to reimburse the government for the cost of producing their trial transcripts if they lose their criminal appeals. The Court held that the distinction between incarcerated indigents and other indigents served no legitimate purpose and thus failed rational basis review. *See Rinaldi*, 384 U.S. at 309–10, 86 S.Ct. at 1499–1500.

defendants. Allowing the district court to depart from the statutory minimum without a government motion in this case would not serve the interest of eliminating prosecutorial bias contemplated by the *Wade* Court. While, under *Mabry* and *Santobello,* King has the right to withdraw his plea if he was not fully informed of the consequences of pleading guilty, he specifically (and emphatically) states that he does not desire this relief. Thus, King has disclaimed his only potential remedy, and we deny his due process claim.[6]

## IV. Sentencing as an Armed Career Criminal

▪ The district court found that King had three prior convictions for violent felonies; thus, it applied the fifteen-year mandatory minimum sentence prescribed by 18 U.S.C. § 924(e)(1).[7] King argues that his three prior burglary convictions do not qualify as violent felonies. We disagree.

18 U.S.C. § 924(e)(2)(B)(ii) specifically lists burglary as a violent felony.[8] The statute does not, however, define burglary. The Supreme Court, recognizing that the definition of burglary varies significantly from state to state, has adopted a uniform, generic definition of burglary for the purposes of § 924(e). *See Taylor v. United States,* 495 U.S. 575, 599, 110 S.Ct. 2143, 2158–59, 109 L.Ed.2d 607 (1990). The Court defined burglary as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.; see also United States v.*

*Simpson,* 974 F.2d 845, 849 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1326, 122 L.Ed.2d 711 (1993).

King argues that his burglaries were not violent felonies because he stole very little of value and did not enter the victims' houses surreptitiously; rather, he knocked on the front door to make sure no one was home before entering. While these facts may be accurate, *Taylor* bars us from considering them when deciding whether the burglaries were violent felonies. Rather, the Supreme Court declared that we may look only to the statutory definition of the crime, the charging paper, and the jury instructions to determine whether the Illinois courts necessarily found all the elements of generic burglary. *See Taylor,* 495 U.S. at 602, 110 S.Ct. at 2160; *United States v. Howell,* 37 F.3d 1197, 1207 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1810, 131 L.Ed.2d 735 (1995).

Two of King's three burglary convictions were for the offense of residential burglary. Under Illinois law, "A person commits residential burglary who knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILCS 5/19–3(a). These elements correspond to the elements of generic burglary outlined in *Taylor.* To convict King under § 19–3, the Illinois courts must have found that the elements of generic burglary were present. Thus, his two residential burglaries were violent felonies under § 924(e).

King's third conviction was for burglary under 720 ILCS 5/19–1. Section 19–1(a)

---

6. King also argues that the government breached the plea agreement by failing to fully inform the district court of the nature and extent of his cooperation. At sentencing, the government made no mention of any specific assistance rendered by King. While the government should have fulfilled its promise to inform the court of King's assistance, *see United States v. Rosa,* 946 F.2d 505, 510 (7th Cir.1991), the breach was harmless. The district court could take King's cooperation into account when imposing its sentence, and information from the government concerning his level of cooperation would be helpful. However, the court already imposed the lowest possible sentence (the statutory minimum of 180 months), so additional information concerning King's assistance to authorities would not have helped his cause.

7. Section 924(e)(1) states in relevant part: "In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, ... such person shall be fined not more than $25,000 and imprisoned not less than fifteen years."

8. Under § 924(e)(2)(B)(ii), the term "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year ... that ... is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

states that "A person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle as defined by the Illinois Vehicle Code, railroad car, or any part thereof, with intent to commit therein a felony or theft" (footnote omitted). This court has noted that § 19–1 is broader than the definition of generic burglary in *Taylor* because it includes entries into vehicles as well as buildings or structures and contains the phrase "or any part thereof." A person could commit burglary under § 19–1 without ever entering a building or structure—a required element under *Taylor*. *Howell*, 37 F.3d at 1206; *Simpson*, 974 F.2d at 849. Thus, we must examine the charging paper and/or jury instructions to determine whether the Illinois court found that King entered a building or structure. Cf. *Howell*, 37 F.3d at 1206–07.

The charging paper states that King, "without authority, knowingly entered a building of Matilda Parris located at 125 South Wesley, Springfield, Sangamon County, Illinois, with the intent to commit therein a theft." King entered a building; thus, all of the elements of generic burglary were present. Consequently, the district court correctly held that King's conviction under § 19–1 was a violent felony and that the fifteen-year mandatory minimum sentence applied.

## V. Conclusion

King is not entitled to a downward departure for substantial assistance without a government motion, and he was correctly sentenced as an armed career criminal. Thus, the judgment of the district court is

AFFIRMED.