In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-2307

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARNELL C. BILLINGS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 05 CR 20041—**Michael P. McCuskey**, *Chief Judge.*

ARGUED APRIL 16, 2008—DECIDED OCTOBER 8, 2008

Before EASTERBROOK, *Chief Judge,* and WOOD and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Defendant Darnell Billings received a statutory minimum sentence of life imprisonment after pleading guilty to dealing over 50 grams of crack cocaine. He claims the government should have rewarded his cooperation by filing a substantial assistance motion under 18 U.S.C. § 3553(e), which would have freed the district court to sentence him below the statutory minimum. Billings also claims the government should

have told him that his incarcerated status would make it more difficult for him to cooperate with authorities. Because the government did not act improperly in withholding the substantial assistance motion and because it had no duty to inform Billings about the negative consequences of his incarceration, we affirm.

## I. BACKGROUND

On September 2, 2004, Billings sold crack cocaine to a confidential informant in Champaign, Illinois. He was arrested for this conduct on August 5, 2005, and later indicted on one count of knowingly possessing with the intent to distribute more than 50 grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

At an August 3, 2006, hearing, Billings pled guilty. In doing so, he testified that he understood that because of two prior qualifying drug convictions, he faced a mandatory minimum sentence of life imprisonment unless the government moved for a downward departure based on his cooperation and assistance. *See id.* § 841(b)(1); 18 U.S.C. § 3553(e). The district judge promised he would sentence Billings to less than life imprisonment if the government moved for a downward departure, but the government stated that Billings had yet to cooperate. After the hearing, Billings and the government entered a cooperation agreement, the contents of which are not in the record.

On January 12, 2007, Billings appeared for his sentencing hearing. Billings's counsel asked to delay sentencing by sixty days to give Billings more time to cooperate. The

government did not object to the extension but indicated that time was running out for Billings. The prosecutor in charge of the case described how Billings had failed to take advantage of a previous opportunity to cooperate before he had been incarcerated:

> Prior to [filing the complaint], the government took the unusual step of asking agents to arrest the defendant without a warrant on probable cause so that we could speak with him without any public filing of charges about this very issue, the fact that he faced a mandatory sentence of life if he were to be charged and convicted, and we did that so that we could advise him of that likely scenario and to give him the opportunity without any disclosure to the public that we were giving him that opportunity.

> And after meeting with him in my office and in, I believe, January of 2005, two years ago, we never heard from him again; and we ended up filing the complaint in February of 2005 and then spent the next six months looking for him, at which point in August of 2005 he was arrested.

The prosecutor also stated that although Billings had "made an attempt to meet with law enforcement once" after pleading guilty, "there was no information that [he] had provided that was of any assistance to [the agents] whatsoever."

On May 25, 2007, Billings appeared for the rescheduled sentencing hearing. A new prosecutor appeared on behalf of the government after being briefed on the case by the

prosecutor in charge about an hour before the hearing. The new prosecutor stated that the government would not move for a downward departure because Billings's attempts to cooperate had not "risen to the level of substantial assistance." He remarked on Billings's extensive criminal history and stated that he was "struck" by the fact that Billings "managed at age 27 to have 10 children from six different women, all of whom will now be without a father." The new prosecutor also acknowledged that he could not provide any more details on the case because he was merely standing in for the prosecutor in charge of the case.

The judge then sentenced Billings to the mandatory minimum of life imprisonment. Billings filed this appeal.[1]

---

[1] The district court erred by failing to allow Billings to allocute prior to sentencing. *See United States v. Luepke*, 495 F.3d 443, 451 (7th Cir. 2007); Fed. R. Crim. P. 32(i)(4)(A)(ii). Billings concedes, however, that he was not prejudiced by this error because he faced a mandatory minimum life sentence, so there is no chance that he "would have received a lesser sentence had the district court heard from him before imposing sentence." *Luepke*, 495 F.2d at 451. Billings also does not claim that he would have said anything that would have changed the government's decision to withhold a substantial assistance motion. Additionally, recent changes to sentencing practices for crack cocaine defendants could not have affected these proceedings because Billings faced a mandatory minimum life sentence. S*ee United States v. Kimbrough*, 128 S. Ct. 558 (2007); United States Sentencing Commission Guidelines Manual (U.S.S.G.) §§ 1B1.10, 2D1.1 (2007).

## II. ANALYSIS

### A. The government did not improperly withhold a substantial assistance motion.

Billings claims the government improperly withheld a substantial assistance motion, thereby preventing the district court from sentencing him below the statutory minimum of life imprisonment. *See* 18 U.S.C. § 3553(e) ("Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."). Although a prosecutor generally has discretion to withhold such a motion, "federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive," or "was not rationally related to any legitimate Government end." *Wade v. United States*, 504 U.S. 181, 185-86 (1992); *see also United States v. Miller*, 458 F.3d 603, 605 (7th Cir. 2006). Because Billings did not raise this argument in the district court, our review is for plain error. *See United States v. Olano*, 507 U.S. 725, 732 (1992) (district court must have committed an "error" that is "plain," "affect[s] substantial rights," and "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings").

We agree with Billings that there are some gaps in the record regarding the type and level of assistance that he provided to the government. The cooperation agreement

between Billings and the government is absent from the record. At the first sentencing hearing, the prosecutor in charge of the case mentioned but did not describe in any detail how Billings had cooperated after pleading guilty. And at the rescheduled sentencing hearing, the new prosecutor was unable to describe any cooperation attempts since he had joined the case only an hour beforehand. Perhaps the government could have elaborated on the assistance that Billings had offered and explained why it had fallen short. Or maybe the government never did this because Billings never moved to compel the government to file a substantial assistance motion.

At any rate, Billings must make a "substantial threshold showing" that the government improperly withheld a substantial assistance motion before he can receive a remedy or even discovery or an evidentiary hearing on this issue. *Wade*, 504 U.S. at 186. Billings tries to do this by pointing to the new prosecutor's comments at the rescheduled sentencing hearing. He claims these comments are evidence that the government withheld a substantial assistance motion because of Billings's numerous past convictions and the myriad children he had fathered. If this were true, the government would have acted impermissibly. *See United States v. Rounsavall*, 128 F.3d 665, 669 (8th Cir. 1997) ("[W]hen contemplating filing a §3553(e) motion, the government cannot base its decision on factors other than the substantial assistance provided by the defendant."). But a closer review of the transcript from that hearing shows that the new prosecutor was merely explaining why Billings was eligible for a

mandatory life sentence and summing up the few facts
that he knew about the case:

> There have been attempts to have cooperation.
> None of it has risen to the level of substantial
> assistance. . . .
>
> . . .
>
> Beyond that, Your Honor, I can only say this is a
> sentence that is mandated by Congress. The defen-
> dant is a—is the type of defendant Congress
> has said fits within the criteria for three strikes.
>
> He has been involved in criminal activity since age
> 17, and even has a juvenile record before then. He
> has accumulated a staggering amount of serious
> felony convictions, as well as a number of minor
> convictions. He seems to not care at all about the
> law.
>
> Another thing that struck me was I'm sad to say he
> has managed at age 27 to have 10 children from
> six different women, all of whom will now be
> without a father. So to that extent, that's the sad-
> dest part about the case in my opinion, Your
> Honor.
>
> Your Honor, I can't provide any more details
> because I'm standing in for [the prosecutor in
> charge of this case]. This is not my case.

The new prosecutor mentioned Billings's previous crim-
inal activity to explain why he faced a mandatory life
sentence. And while the new prosecutor might have been

expressing his disapproval with Billings's apparent promiscuity, his remark was merely an aside that seems unrelated to the government's decision to withhold the substantial assistance motion. Indeed, the new prosecutor acknowledged that he was merely speaking on behalf of the prosecutor in charge of the case and was not the person who had decided to withhold a substantial assistance motion. Sentencing Hr'g Tr. 7-8, May 25, 2007. ("There is no change in the status [of this case]. [The prosecutor in charge] so advised me approximately an hour ago.").

Moreover, Billings's counsel essentially conceded at the hearing that the government had a rational basis for withholding this motion because Billings's incarceration had rendered him useless to the government:

> [Billings] has met with people several times, agents several times. But the problem is, is because of his long incarceration, for whatever reasons, it was before my time, a person who has been in custody for a period of time is not a person who people on the outside are going to deal, talk with, give information to helping themselves with the government.

> It was not that he did not try to help the government. It was just he was unable. And I think there is a very big difference between someone who just refuses to cooperate with the government and someone who tries, but because of his situation is unable.

*See also United States v. King*, 62 F.3d 891, 895 (7th Cir. 1995) ("Incarcerated defendants cannot, on balance, provide as

much assistance as defendants who are free pending trial."). Billings does not cite (and we have not found) any law requiring the government to make a substantial assistance motion when a defendant makes an unsuccessful yet good faith attempt to help. Rather, under section 3553(e), the government gets to decide whether a defendant's cooperation merits a substantial assistance motion. *See Wade*, 504 U.S. at 185 (noting that "the Government [has] a power, not a duty, to file a motion when a defendant has substantially assisted"); *cf.* 18 U.S.C. § 3553(f) (permitting a court to sentence below a statutory minimum in certain situations even if the government does not support such a sentence). We cannot second-guess the government's decision to withhold a substantial assistance motion where, as here, its decision was neither irrational nor based on an impermissible motive. *See Wade*, 504 U.S. at 185-87.

### B. The government was not required to inform Billings of the difficulty in providing substantial assistance.

Billings also claims the government had a duty to inform him that his incarcerated status would make it harder for him to cooperate, which in turn would diminish the chances that he would be the beneficiary of a substantial assistance motion. He relies on our decision in *King*, where we held that if a defendant is "not fairly informed of the consequences of his decision to plead guilty, a due process violation has occurred." 62 F.3d at 895.

We do not see how *King* benefits Billings, as that decision also states that "the failure to inform [the defendant] of the effect of his incarceration is not the type of constitutional violation that, under *Wade*, would allow us to review the prosecutor's decision not to file the motion." *Id.* Moreover, *King* involved a plea agreement, where the defendant claimed that the government allowed him to plead guilty without informing him that he was unlikely to get a substantial assistance reduction because he was incarcerated. *Id.*; *see also United States v. Villareal*, 491 F.3d 605, 610-11 (6th Cir. 2007). By contrast, Billings did not enter a plea agreement (and he only entered a cooperation agreement after pleading guilty), so he cannot claim that the government improperly induced him to plead guilty or breached a plea agreement with him. *Cf. United States v. Wilson*, 390 F.3d 1003, 1004 (7th Cir. 2004).

It also seems far-fetched that Billings had no inkling that his ability to assist the government would diminish once he was imprisoned. Billings knew that the government had delayed arresting and jailing him in hopes that he would cooperate, presumably because he was a more valuable asset on the street than in prison. So Billings had some idea that incarceration would dampen his chances of receiving a substantial assistance motion.

## III. CONCLUSION

The district court's judgment is AFFIRMED.