NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 3, 2012
Decided February 4, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 11-1727

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 07 CR 410-1 |
| CALVIN BUFFINGTON, *Defendant-Appellant.* | Harry D. Leinenweber, *Judge.* |

**O R D E R**

Calvin Buffington pleaded guilty to conspiring to possess and distribute cocaine and heroin, 21 U.S.C. §§ 846, 841(a)(1), possessing and distributing those drugs, *id.* § 841(a)(1), and possessing a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1). Buffington argues that the prosecutor improperly withheld a motion under U.S.S.G. § 5K1.1 to reduce his prison sentence for substantial assistance. Buffington waived this contention through his conduct in the district court, and even if he had not, he failed to make a

substantial threshold showing that the prosecutor's decision was improper. Accordingly, we affirm the judgment.

From 2002 through 2007 Buffington led a large-scale drug trafficking organization based in Chicago, Illinois. He coordinated purchases of wholesale quantities of cocaine and heroin and directed other members of the organization (including his mother) to store the drugs throughout Chicago and to distribute them in Chicago and Detroit, Michigan. Buffington was arrested by DEA agents in June 2007 and confessed to selling wholesale quantities of drugs. The agents who arrested him found more than $380,000 in currency in the hotel room where he was staying. Buffington identified his current supplier of cocaine as Marco Pulido.

Before Buffington was booked into jail, he agreed to assist agents who were investigating Pulido. Buffington wore a concealed wire to a meeting with Pulido, whose recorded statements identified him as a significant drug dealer and as Buffington's cocaine supplier. Pulido was arrested based on those statements, but he fled while on pretrial release and is currently a fugitive.

After the meeting with Pulido, Buffington was charged and detained pending trial. But neither that detention nor his agreement to cooperate with the agents stopped his criminal conduct. From jail Buffington continued to direct others to conceal and disburse drug proceeds. In the days after his arrest Buffington told one woman to collect cocaine proceeds from a customer and deliver the money to his mother. And in August 2008 he directed that approximately $650,000 still hidden from authorities be disbursed to his mother and his girlfriend.

During plea negotiations conducted in April 2009—almost two years after Buffington's arrest—the prosecutor had offered a deal that included a proposed motion to reduce his sentence by "40 percent." (The record does not disclose whether the proposal was for 40 percent off the upper or lower end of the guidelines range, or whether the reduction was conditioned on continuing cooperation.) The parties never finalized this deal; when Buffington pleaded guilty in October 2009, he did so without a plea agreement or a commitment from the government to move for a reduced sentence.

In May 2010 two women approached federal authorities and offered to provide information on drug traffickers. In return they asked that Buffington receive cooperation credit for any prosecution arising from their efforts. They were assigned to a DEA agent and provided leads, such as addresses and vehicle information for suspected traffickers, but none of their intelligence led to further prosecutions. In September 2010 the prosecutor's

office told the DEA agent that Buffington no longer was cooperating; in turn the agent told the women that Buffington no longer could benefit from their assistance.

At sentencing the district court calculated a guidelines imprisonment range of 262 to 327 months for Buffington's drug offenses, plus a consecutive 60-month term for the firearm offense. Defense counsel requested a below-range sentence of 180 months on the drug convictions because of Buffington's cooperation with the government. Counsel pointed to the testimony of two DEA agents at the hearing: One stated that Buffington's recorded conversation with Pulido had led directly to Pulido's arrest, and the other testified about the two women who had tried to supply information on other narcotics suppliers, on Buffington's behalf. Defense counsel asserted that the government would have filed a § 5K1.1 motion if Pulido had been convicted of drug crimes instead of becoming a fugitive. *See* U.S.S.G. § 5K1.1 ("Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."). And because Buffington could not be faulted for Pulido's flight, the lawyer continued, the court should give him a reduced sentence.

The prosecutor responded that the government had not filed a § 5K1.1 motion because Buffington had continued to engage in criminal activity after his arrest, and because the information he supplied, apart from the information about Pulido, had not been useful. Likewise, the prosecutor added, the intelligence provided by the two women on Buffington's behalf had not been useful. Pulido's fugitive status, the prosecutor explained, had not affected the government's decision; in fact, the prosecutor insisted, the government's plea proposal in April 2009 was evidence that the government was willing to discuss a cooperation deal even two years after Pulido's flight. The government was recommending a within-guidelines sentence, the prosecutor explained, because Buffington's criminal activity had been "serious and violent in nature," he had involved family and friends in his organization, his cooperation did not lead to prosecution of anyone other than Pulido, his third-party informers did not provide any prosecutable information, and he continued to participate in the drug scheme after his arrest.

On the other hand, the prosecutor did not impede the district court's consideration of Buffington's cooperation. The prosecutor alerted the court that the government possessed more than 100 pages of reports recounting information proffered by Buffington during interviews with agents. The prosecutor deemed those reports to be privileged against disclosure to the court without Buffington's consent, and thus invited Buffington to waive that privilege so that the judge could assess not only the full scope of his cooperation but also "why it is that those proffers ended." Buffington's lawyer refused to waive the

privilege and instead said that she had "no interest in taking it any further." At that point the discussion about Buffington's cooperation ceased.

The district judge was amenable to a "two-year break" because Buffington had cooperated in the government's investigation of Pulido. The judge added, however, that he was unwilling to give "too much of a break" because of the large size of the drug trafficking scheme, Buffington's leadership role, and his involvement of his mother and other family members in criminal activity. The court sentenced Buffington to a below-guidelines term of 238 months on the drug charges, and to a consecutive 60-month term on the gun charge.

On appeal Buffington relies on *Wade v. United States*, 504 U.S. 181 (1992), in arguing that the prosecutor improperly withheld a motion to reduce his sentence under § 5K1.1 for substantial assistance. We conclude, however, that Buffington waived reliance on *Wade* through his actions in the district court. Buffington asserts that the prosecutor disregarded the assistance he provided, but it was Buffington who kept away from the district court the information essential to fully appreciate the extent of his cooperation. The prosecutor offered to share Buffington's proffers with the court, but Buffington refused to waive his claim of privilege. Indeed, his lawyer quickly announced that Buffington had "no interest in taking it any further" once the prosecutor hinted that the proffer materials would reveal not only the information Buffington had provided, but also the reason his cooperation had ended. Buffington thus thwarted the district court's access to information that would have been relevant if the government had heeded his request for a § 5K1.1 motion, and given this tactic he cannot complain that the motion was never made.

At all events, we would reject the *Wade* claim even if Buffington had not waived it. In the absence of a plea agreement, a prosecutor generally retains broad discretion to decide whether to file a substantial-assistance motion. *See Wade*, 504 U.S. at 185–86; *United States v. Billings*, 546 F.3d 472, 475 (7th Cir. 2008); *United States v. Lezine*, 166 F.3d 895, 900–01 (7th Cir. 1999). A prosecutor's decision to withhold the motion will be upheld unless the defendant shows that the decision was based on an unconstitutional motive, such as race, or lacked a rational relationship to some legitimate government objective. *See Wade*, 504 U.S. at 185–86; *United States v. Miller*, 458 F.3d 603, 605 (7th Cir. 2006).

Buffington continues to assert that the government's real reason for not filing a § 5K1.1 motion was Pulido's flight, and he argues that withholding the motion on that basis had no rational connection to any legitimate government end. But the prosecutor stated that she was unwilling to file a § 5K1.1 motion, not because Pulido was a fugitive, but because of Buffington's continued criminal activity after his arrest, his failure to provide useful information against anyone but Pulido, and the serious nature and circumstances of his crimes. Buffington's insistence that Pulido's flight was the real reason for the government's

inaction rests entirely on his own say-so and finds no evidentiary support in the record. Generalized accusations of improper motive, like this one, cannot establish entitlement to relief. *See Wade*, 504 U.S. at 186.

Buffington appears to have a more-substantial argument when he says that the prosecutor's offer of a § 5K1.1 motion during plea negotiations in April 2009 shows that her later justification for withholding the motion is transparently pretextual. When that offer was made, Buffington points out, the government already knew about his continued criminal activity and the "serious and violent" nature of his crimes. One problem with this reasoning, however, is that the record is silent concerning whether the government's offer was conditioned on *continued* cooperation; Buffington has never made an effort to spell out the specifics of the government's proposal. Moreover, at sentencing the prosecutor also stated that she was unwilling to file the motion because Buffington had not provided *substantial* assistance to the government: His information did not lead to a case against anyone other than Pulido, and neither did his third-party informers provide prosecutable information. Whether a defendant has provided substantial assistance is precisely the type of judgment call that the government is entitled to make in connection with decisions on § 5K1.1 motions. *See Billings*, 546 F.3d at 476–77; *United States v. Emerson*, 349 F.3d 986, 988 (7th Cir. 2003). Although Buffington stresses on appeal that the government continued to engage in proffer sessions with him through 2010, these sessions yielded no actionable information (and, again, he would not allow the district court to see the information he actually provided and, at the same time, learn why his cooperation had ended). The government is not required to make a substantial assistance motion "when a defendant makes an unsuccessful yet good faith attempt to help." *Billings*, 546 F.3d at 476.

AFFIRMED.